(No. 12011.—Decree affirmed.)
ANTON KRZEMINSKI *et al.* Appellees, *vs.* FRANCISKA
KRZEMINSKI, Appellant.

*Opinion filed October 21, 1918.*

APPEALS AND ERRORS—*when decree will not be reversed for want of proper parties.* A decree setting aside a will which left all of the testator's property to the widow will not be reversed, on appeal by the widow, for error in proceeding to a decree without all the children of the testator being made parties or a guardian *ad litem* appointed for those who were minors, where such error does not injuriously affect the appellant or any other person, the decree being in favor of the children and fully protects their interests.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

JUDD H. MATTHEWS, (R. C. MERRICK, of counsel,) for appellant.

LITZINGER, HEALY & REID, (JAMES J. FINN, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This bill was filed by Anton, Victoria and Mary Krzeminski, three of the children of John Krzeminski, who died in Cook county December 30, 1914. The bill alleges that the testator left surviving him Franciska Krzeminski, his widow, and his children in addition to the complainants, Stanislaw, Leokadya, Marta, Franciska and Joseph; that the testator owned real and personal property of a value of more than $4000; that by an instrument in writing purporting to be his last will and testament, and which had been admitted to probate as such, the widow was given all of testator's property and was appointed executrix of the will. The bill alleges that the testator was not of sound mind and memory at the time he executed that instrument; that his mind and memory were so impaired as to render him incapable of making a will. The bill further alleges that the testator's property had been accumulated by him prior to his marriage with Franciska, who was his second wife and who was not the mother of any of his children. The bill also charges fraud and undue influence, but the only issue submitted to the jury was whether the testator was of sound mind and disposing memory at the time he signed the instrument purporting to be his last will and testament. The answer denies the material allegations of the bill, and denies that the testator was of unsound mind or that there was any fraud or undue influence practiced in securing the execution of the will. Joseph Krzeminski was granted leave to change his position from that of defendant to that of complainant in the bill. A hearing was had before a jury and a verdict returned finding that the testator was not of sound mind at the time he executed the instrument offered in evidence as his will. The court overruled a motion for a new trial and entered a decree on the verdict, finding that the writing in question was not the last will and testament of John Krzeminski, that he was not of sound mind and

memory at the time it was executed, and the probate thereof was set aside and declared null and void. The widow has prosecuted this appeal to this court, and among other errors relied on insists the decree should be reversed (1) because of a failure to make one or more of the children of the testator parties defendant to the bill; and (2) because one or more of the children made defendants were not served with process and no guardian *ad litem* was appointed for any of the minor parties.

It does not appear to have been considered important to correctly allege in the bill and to prove in an orderly manner the number and names of the children the testator left surviving him. From such fragmentary references as there are in the record upon this subject we infer that there was no child of the testator surviving him named Franciska, which was the name of the widow, and that Anton, Victoria, Mary, Stanislaw, Leokadya, Marta and Joseph were the only surviving children. Joseph having on his motion been made a complainant, the children of testator made defendants were Stanislaw, Leokadya and Marta. Stanislaw was sometimes called Steve, and Steve is the one it is claimed was not made a party to the suit. Stanislaw and Marta were served with summons. Some of the children,—how many or which ones we cannot determine,—were minors and no guardian *ad litem* appears to have been appointed for anyone. Stanislaw and Marta answered the bill by counsel. No answer appears to have been filed by Leokadya or anyone in her behalf. We infer from an affidavit presented in this court by Victoria Krzeminski, as next friend of Leokadya, a minor, that Leokadya was, in fact, a minor. The affidavit was made in support of a motion for leave to enter the appearance of Leokadya as a party defendant and appellee in this court, and it is stated in the affidavit that Leokadya openly appeared at the trial of this cause and took part in the proceedings as a contestant of the will. No objection raising any of these ques-

tions was made in the court below, and the question presented is whether the irregularities referred to require a reversal of the decree.

If there had been service on Leokadya and a guardian *ad litem* had been appointed for her and had appeared and represented her interests, the most favorable result that could have been obtained in her behalf would have been the decree entered in this case setting aside the will and its probate. If the will had been sustained the children of the testator would have received nothing whatever from their father's estate. Their interests favored setting aside the will so that their father's estate and property would descend as intestate estate. None of the children of testator were prejudiced or injured by the decree, and none of them, nor anyone in their behalf, is complaining of the decree. All the testimony offered by the complainants and defendants on the issue submitted to the jury was heard, and that issue was decided by the jury upon the testimony offered as to the soundness or unsoundness of the testator's mind. No right of the widow was denied or prejudiced because no guardian *ad litem* was appointed for the minors and no service had upon a party defendant. Irregular and erroneous as the proceedings were, the errors and irregularities did not prejudice or affect appellant, and she cannot complain of errors which do not affect her rights but only affect the rights of others who are not complaining. (*Clark* v. *Shawen,* 190 Ill. 47; *Boyle* v. *Boyle,* 158 id. 228; *Beal* v. *Harrington,* 116 id. 113.) The rights of the widow, appellant here, depended upon whether the testator was of sound mind when he executed the will, and whether he was or not did not depend upon whether all his children made defendants to the bill were served with process and a guardian *ad litem* appointed. If the decree had sustained the will a child's interest would have been injuriously affected, and it could have complained that its rights could not be adjudicated without it being made a party and served with

process. As it is not claimed the decree setting aside the will for unsoundness of mind of the testator was influenced by the fact that one of his children had not been served with process and the decree as fully preserves the rights of such child as if she had been served, we do not see why the appellant, whose rights were not affected by the error, should be permitted to take advantage of it to secure a new trial. Decrees which are supported by the law and the evidence should not be reversed at the instance of the losing party for errors which do not affect or prejudice the complaining party or any other party to the suit. They should not be reversed where the errors complained of affect no one's rights, simply in order that the record may be made free from error. Cases are reviewed not solely for the purpose of determining whether there is any error in the record, but for the purpose of determining whether, if there are errors, they prejudiced or might have prejudiced the party complaining or affect the substantial justice of the decree upon the complaining party's rights.

It is complained that the evidence was not sufficient to support the verdict of the jury and the decree of the court. The testimony upon this question was brief. The testator had been for some time afflicted with asthma and was not in good health. Nine days before his death he was attacked with pleuro-pneumonia. Dr. Blair treated testator at his home for five days. He grew constantly worse. The doctor testified that pus effusion developed in the right chest. He had pain in the right side, temperature and expectoration. The doctor had him removed to a hospital, where he constantly grew worse, had temperature, expectoration, high pulse, weak heart and some pain. The ninth day the doctor thought his chances of recovery were doubtful and advised an operation to relieve the pus. The testator was made ready for the operation but died while the anæsthetic was being administered to him. After the operation was decided upon he requested a priest be sent for to administer the

last sacrament. The doctor testified the will was signed between a half hour and an hour before the testator's death. The doctor was one of the witnesses to the will and testified that in his opinion the testator was of sound mind and understood what he was doing.

The priest testified he was called to administer to testator the last rites of the church; that the testator's wife was present, and that the testator asked him to prepare or have prepared a will giving all his property to his wife. The priest went to a near by banker, who under the witness' instructions prepared a will on a printed form, and the witness took it to the hospital and either read or explained it to the testator, who could not write but signed it by mark in the presence of the priest, the doctor, the testator's wife and one or two other persons who did not testify, and the priest and the doctor signed it in the presence of the testator as witnesses. He testified that before he went to the bank to have the will prepared, the testator, his wife and the witness had a talk about the will and the testator told him how he wanted it made. The witness expressed the opinion that the testator's mind and memory were normal and good at the time.

Frank Krzeminski, a brother of testator, testified he, in company with the testator's daughter Mary, visited the testator at the hospital the day before his death; that the testator did not know him or the daughter; that he asked the testator what was the matter and he did not answer. The witness testified he visited testator at his home about two weeks before his death; that his breathing was then very difficult and he was scarcely able to talk; that he would have to stop after saying a word or two; that when he saw him at the hospital he could not get a word out of him; that sounds came from his mouth but he could not tell what they were.

Dr. Freemel testified in behalf of contestants. He described the disease and the effect on the system of pleuro-

pneumonia accompanied with pus. He testified that poisons are created, taken into the circulation and infect all the tissues of the body, especially the nerve tissues; that this begins about the third day and usually produces a cloudiness of the mind, which eventually merges into delirium and incoherence of speech. In the more severe types there is delusion and hallucination and failure to recognize loved ones and friends. The testator was fifty-seven years old, and the doctor testified a man of that age is very susceptible to pneumonia and his brain very susceptible to the conditions the doctor described. He further testified that many cases of that disease recovered, and in most of them the patient had control of his faculties and knew what he was doing, but that this depended upon the physical condition of the patient and the severity of the attack.

This was all the testimony that bore directly upon the condition of the testator's mind. It is our conclusion that we would not be justified in disturbing the decree on the ground that it was palpably contrary to the weight of the testimony.

Complaint is made of the ruling of the court in permitting testimony of what the testator said during his illness and before he was taken to the hospital, about his property and the share or interest he wanted his children to have in it. This testimony was only competent for the purpose of showing the condition of the testator's mind at the time the conversation occurred, and it is contended that as the proof of the contestants as to the unsoundness of mind related to the period after the testator was taken to the hospital it should not have been admitted. It is true there was no testimony that at the time of this conversation the testator was not of sound mind, but the witnesses described his physical condition and appearance at the time, his difficulty in talking, and these things, taken in connection with the medical and other testimony that his condition constantly grew worse until his death, convince us that the admission

of the testimony complained of was not so erroneous as to warrant a reversal of the decree.

We find no prejudicial error in the instructions given the jury, and the decree is affirmed.    *Decree affirmed.*