643 N.E.2d 1280 (1994)
268 Ill. App.3d 655
205 Ill.Dec. 673
SOCIETY OF MOUNT CARMEL, Carmelite Fathers, Fathers of the Order of Mount Carmel, Inc., Crespi High School, Carmelite Father John Knoernschild, O. Carm., Carmelite Father Joe Atcher, O. Carm., Plaintiffs-Appellants and Appellees,
v.
NATIONAL BEN FRANKLIN INSURANCE COMPANY OF ILLINOIS and The Continental Insurance Company, Defendants-Appellees and Appellants.
Nos. 1-91-2530, 1-91-2533.
Appellate Court of Illinois, First District, Fifth Division.
November 10, 1994.
*1282 Thomas E. Roche, Halfpenny, Hahn, Roche & Marchese, Chicago, for plaintiffsappellants and appellees.
Michael Resis, Querry & Harrow, Ltd., Chicago, for defendants-appellees and appellants.
*1281 Justice GORDON delivered the opinion of the court:
Plaintiffs filed this action seeking a declaration of their rights as insureds and defendants' liabilities as insurers under several insurance policies. In their complaint, plaintiffs alleged that defendants owed them a duty to defend in an action filed in California by Larry Gabriel, a former teacher at plaintiff Crespi High School, who claimed that he had been wrongfully terminated from his position. Plaintiffs also sought attorney fees incurred in defending the Gabriel action and in the filing of this action, alleging that defendants' refusal to defend the Gabriel litigation was in bad faith. The trial court granted plaintiffs' subsequent motion for summary judgment, finding that defendants had breached their duty to defend. In response to plaintiffs' motion for a determination of damages, the trial court awarded plaintiffs attorney fees incurred in defending the Gabriel action, but refused plaintiffs' request for fees incurred in bringing this action. After the trial court's determination on the issue of fees, plaintiffs sought leave to file an amended complaint which sought a declaration that defendants were estopped from raising any policy defenses to coverage. The trial court denied this motion. On appeal, plaintiffs contend that the trial court erred in denying their request for fees incurred in the filing of *1283 this action and in denying their motion to file an amended complaint. Defendants filed a separate appeal challenging the trial court's order granting plaintiffs' motion for summary judgment on the duty to defend issue and the trial court's award of attorney fees to plaintiffs. Plaintiffs' appeal and defendants' appeal were subsequently consolidated.

FACTS
This litigation concerns three insurance policies which were issued to "Society of Mount Carmel and/or Carmelite Fathers" by defendants on or about January 17, 1985. The first policy was a comprehensive business or general liability policy. In its schedule of hazards, this policy listed Crespi High School as one of the hazards covered by the policy. The second policy was a workers' compensation and employer's liability insurance policy. The third policy was an umbrella liability policy which referred to the other two policies as underlying insurance.
On October 3, 1985, Larry Gabriel, who is domiciled in California, filed a five count complaint in a California court naming Fathers of the Order of Mount Carmel, Inc., Crespi High School, Carmelite Father John Knoernschild and Carmelite Father Joe Atcher as defendants. The Society of Mount Carmel and the Order of Mount Carmel are domiciled in Illinois; the remaining defendants in the Gabriel litigation are domiciled in California.
In his complaint, Gabriel alleged that he was wrongfully terminated from his position as a teacher at Crespi High School by the aforementioned defendants, who are plaintiffs in this action. The Gabriel complaint sought recovery under a variety of legal theories: count I alleged breach of an employment contract; count II alleged breach of the covenant of good faith and fair dealing; count III alleged intentional infliction of emotional distress; count IV alleged negligent infliction of emotional distress; and count V alleged fraud. In count IV, Gabriel alleged that as a result of defendants' actions he suffered "extreme emotional distress, including worry, anxiety, embarrassment, loss of sleep and tension, resulting in some permanent disability [to him]."
On May 3, 1989, plaintiffs filed a complaint in Illinois against National Ben Franklin Insurance Company of Illinois and Continental Insurance Co. (herein referred to collectively as defendants), which sought a declaratory judgment that defendants owed a duty to defend under the three policies. Plaintiffs' complaint alleged that "despite repeated demands, defendants have repeatedly refused to provide a defense to the claims and allegations made in [Gabriel's] complaint." This complaint alleged that defendants' refusal to defend was in bad faith and asked for attorney fees and costs.
On September 15, 1989, defendants filed a motion to dismiss plaintiffs' complaint under section 2-615 of the Illinois Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-615 now codified at 735 ILCS 5/2-615 (West 1992)), alleging among other things that plaintiffs' complaint should be dismissed because Larry Gabriel, the plaintiff in the underlying action, was a necessary party and had not been joined in the declaratory judgment action. In an order entered November 6, 1989, the trial court denied defendants' motion to dismiss for failure to join a necessary party.
On January 22, 1990, plaintiffs filed a motion for summary judgment asking that the trial court find in its favor on the issue of whether defendants had a duty to defend the underlying Gabriel litigation. On May 11, 1990, the trial court granted plaintiffs' motion for summary judgment, finding that defendants owed such a duty. The court found that the Gabriel complaint's allegation of negligent infliction of emotional distress sounded in tort and was therefore potentially within the policy's coverage.
On July 10, 1990, plaintiffs filed a motion for a determination of damages which asked the trial court for attorney fees and costs incurred in defending the Gabriel litigation and for fees and costs incurred in bringing this declaratory judgment action. On September 7, 1990, the trial court awarded plaintiffs $56,647.85 in attorney fees incurred in defense of the Gabriel litigation for the period up until June 11, 1990, which covered discovery and preparation for the trial. The trial court denied plaintiffs' request for attorney *1284 fees incurred in bringing this declaratory judgment action. On January 10, 1991, plaintiffs filed a supplemental motion for a determination of damages for fees incurred after June 10, 1990. In an order entered March 7, 1991, the trial court awarded plaintiffs $51,605.63 for attorney fees incurred during the period between June 10,1990, and November 30,1990, which included the actual trial of the Gabriel litigation.
The Gabriel litigation had proceeded as follows. On June 4, 1990, the California court dismissed the counts in Gabriel's complaint which alleged intentional and negligent infliction of emotional distress. Trial was commenced on the three remaining counts on July 23, 1990. On August 24, 1990, the jury rendered a verdict in favor of Gabriel on counts I and II which alleged breach of contract and breach of the covenant of fair dealing and awarded Gabriel $198,311.57 in damages. The jury was unable to reach a verdict on the fraud count.
On April 23, 1991, plaintiffs filed a motion to add Gabriel as a necessary party. On April 30, 1991, plaintiffs filed a motion for leave to file a second amended complaint naming Gabriel as an additional plaintiff and seeking a declaration that because defendants breached their duty to defend they were estopped from raising policy defenses with respect to their duty to indemnify. The trial court denied plaintiffs' motion for leave to file their second amended complaint on May 23, 1991. On June 19, 1991, plaintiffs filed a motion to reconsider and clarify, for purposes of res judicata, the court's May 23, 1991 order. On July 2, 1991, the court denied plaintiffs' motion to reconsider and denied plaintiffs' request for alternative relief.
Plaintiffs filed a notice of appeal challenging the orders of May 23, 1991 and July 2, 1991, and that portion of the court's earlier order of September 7, 1990, which denied plaintiffs request for fees incurred in bringing the declaratory judgment action. Defendants filed a separate appeal challenging the trial court's order of May 11, 1990, which granted plaintiffs' motion for summary judgment on the duty to defend issue, and the trial court's orders of September 7, 1990 and March 7,1991 which awarded plaintiffs attorney fees incurred in defending the Gabriel litigation.

OPINION
We first address the issues raised in defendants' appeal since plaintiffs' primary appeal on the estoppel and fee issues is predicated upon a determination that the trial court properly found that a duty to defend existed. In their appeal, defendants challenge the validity of the trial court's order that they had a duty to defend on the grounds that Gabriel, the underlying tort plaintiff, was a necessary party and that his nonjoinder was fatal. Defendants also challenge the trial court's substantive finding that a duty to defend exists under the policies in question. In addressing the issues, we turn at the outset to defendants' contention that the failure to join Larry Gabriel below was error and would require reversal.
Under Illinois law, a necessary party "is one who has a legal or beneficial interest in the subject matter of the litigation and will be affected by the action of the court." (Zurich Insurance Co. v. Raymark Industries, Inc. (1986), 144 Ill.App.3d 943, 946, 98 Ill. Dec. 508, 494 N.E.2d 630; see also Oglesby v. Springfield Marine Bank (1944), 385 Ill. 414, 52 N.E.2d 1000.) Courts have identified three situations where a party is considered necessary:
"A necessary party is one whose presence in a lawsuit is required for any one of three reasons: (1) to protect an interest which the absentee has in the subject matter which would be materially affected by a judgment entered in his absence; (2) to reach a decision which will protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy." Brumley v. Touche, Ross & Co. (1984), 123 Ill.App.3d 636, 644, 79 Ill.Dec. 57, 63, 463 N.E.2d 195, 201.
Specifically, in a declaratory judgment action, "all persons legally interested in the subject matter of the litigation who may be affected by the judgment should be made parties" in order to effectuate complete relief. Zurich Insurance Co. v. Raymark Industries, Inc., 144 Ill.App.3d at 946, 98 Ill.Dec. at 511, 494 *1285 N.E.2d at 633; see also Bezin v. Ginsburg (1978), 59 Ill.App.3d 429, 16 Ill.Dec. 595, 375 N.E.2d 468.
Illinois courts have consistently determined that the tort claimant in an underlying action is a necessary party to a declaratory judgment action brought to determine insurance coverage for that claim. (See M.F.A. Mutual Insurance Co. v. Cheek (1977), 66 Ill.2d 492, 495, 6 Ill.Dec. 862, 864, 363 N.E.2d 809, 811 (plaintiffs in underlying action alleging injuries resulting from car accident were necessary parties to declaratory judgment action brought by insurers to determine insurance coverage); Williams v. Madison County Mutual Automobile Insurance Co. (1968), 40 Ill.2d 404, 407, 240 N.E.2d 602, 604 ("[i]njured claimants are proper parties to such an action and have been held to have been necessary parties to such suit"); see also Reagor v. Travelers Insurance Co. (1980), 92 Ill.App.3d 99, 47 Ill.Dec. 507, 415 N.E.2d 512; General Casualty Co. v. Olsen (1977), 56 Ill.App.3d 986, 14 Ill.Dec. 567, 372 N.E.2d 846.) Courts have based the determination that the claimant in the underlying action is a necessary party on the idea that such claimants have a "substantial right in the viability of the policy," (M.F.A Mutual Insurance Co. v. Cheek, 66 Ill.2d at 495, 6 Ill.Dec. at 864, 363 N.E.2d at 811), or that they are "a real party in interest to the liability insurance contract" whose rights "vest at the time of the occurrence giving rise to his injuries." (Reagor v. Travelers Insurance Co., 92 Ill.App.3d at 103, 47 Ill. Dec. at 509, 415 N.E.2d at 514.) In so doing, courts have noted that a declaration of noncoverage would eliminate a source of funds. (Flashner Medical Partnership v. Marketing Management, Inc. (1989), 189 Ill.App.3d 45, 136 Ill.Dec. 653, 545 N.E.2d 177.) It is therefore clear under these cases that Gabriel is a necessary party. The question which remains is what effect the failure to join Gabriel had on the validity of the trial court's order finding that a duty to defend existed.
Plaintiffs contend that it is unnecessary to reverse and remand this cause for the joinder of Gabriel because the trial court's ruling that a duty to defend existed was, in fact, favorable to Gabriel and adequately protected his interest in the litigation. Such a hindsight oriented analysis, however, is not proper in this instance. Our supreme court addressed the proper legal perspective that a reviewing court must take in determining whether a party is necessary in Oglesby v. Springfield Marine Bank (1944), 385 Ill. 414, 426, 52 N.E.2d 1000, 1005-6, where it stated,
"The interest of absent parties must be determined by the issues presented by the pleadings and the evidence and not by the final decision in the case. The mere fact that the court decides the issues in such a way that the absent parties would have no interest in the subject matter of the suit does not control. Such parties, if they have, or might claim, a substantial and present interest, under the issues involved, are entitled to be heard. They are entitled to be present and to participate in the litigation of all questions affecting such interest."
(See also Lakeview Trust & Savings Bank v. Estrada (1985), 134 Ill.App.3d 792, 811, 89 Ill.Dec. 569, 580, 480 N.E.2d 1312, 1326 ("relevant inquiry is not whether the court's judgment has in fact materially affected the absent individual's interests in the subject matter in controversy; instead it is whether the absent person `might claim a substantial and present interest' [citation], which determines that he is a necessary and indispensable party"); People ex rel. Carson v. Mateyka (1978), 57 Ill.App.3d 991, 995, 15 Ill.Dec. 125, 128, 373 N.E.2d 471, 474 ("[r]equirements of joinder are determined by the pleadings and the evidence, and not by the final decision in the case").) Consequently, that the trial court's ultimate decision was in Gabriel's favor does not remedy or excuse the failure to join Gabriel.
Plaintiffs further contend that even if Gabriel is a necessary party, the failure to join him does not invalidate the adjudication once having been made. In support of their contention that the trial court's order is salvageable, plaintiffs cite Crescio v. Crescio (1937), 365 Ill. 393, 6 N.E.2d 628, and Krzeminski v. Krzeminski (1918), 285 Ill. 113, 120 N.E. 560. These cases, however, are not applicable. In them, the Illinois Supreme Court held that *1286 the nonjoinder of a necessary party did not require that the judgment entered by the trial court be set aside where the nonjoinder was first raised after the trial court had entered judgment. See Crescio v. Crescio (nonjoinder raised for the first time in posttrial motion); Krzeminski v. Krzeminski (non-joinder raised first time on appeal).
Where the nonjoinder of a necessary party is raised for the first time after judgment is entered, the usually absolute and inflexible joinder rule is relaxed. Davidson v. Comet Casualty Co. (1980), 89 Ill.App.3d 720, 44 Ill.Dec. 943, 412 N.E.2d 19; see State Farm Mutual Auto Insurance Co. v. Haskins (1991), 215 Ill.App.3d 242, 245, 158 Ill.Dec. 838, 841, 574 N.E.2d 1231, 1234, wherein the court stated:
"Defendants did not raise the issue of nonjoinder of necessary parties at trial, but this issue may be raised for the first time on appeal. [Citation.] However, when an objection to the nonjoinder of a necessary party is first raised after judgment, it will be rejected unless the absent party was deprived of material rights without being heard or the absent party's interest in the litigation are so interconnected with the named parties' interests that the presence of the absent party is absolutely necessary." Emphasis in original.
Here, however, that situation is not before us. Defendants did not delay their objection to Gabriel's nonjoinder until judgment was entered. Defendants raised the absence of Gabriel as a necessary party in their motion to dismiss, well before judgment was entered, and, contrary to plaintiffs' contention otherwise, have consistently maintained that position below and on appeal. Defendants' objection to plaintiffs' belated motion to add Gabriel after summary judgment had been entered was not a concession that Gabriel's joinder was unnecessary, but urged that his belated joinder did not cure his absence in the earlier proceedings. Consequently, the application of the post-judgment cases which deal with those instances where the joinder issue is raised for the first time after judgment is unwarranted here and the proper perspective to be taken is that established in Oglesby v. Springfield Marine Bank, 385 Ill. at 426, 52 N.E.2d 1000, as quoted earlier. See 4 R. Michael Illinois Practice: Civil Procedure Before Trial § 29.3 at 37 (1989) ("[t]ypically the reviewing court will reverse the judgment entered in the absence of a necessary party, and remand the case"). Thus we conclude that the failure to join Larry Gabriel constituted reversible error.
If we predicate our decision solely on the fact that Gabriel was a necessary party, a reversal and remand would be appropriate. (See, e.g., Flashner Medical Partnership v. Marketing Management, Inc. (1989), 189 Ill. App.3d 45, 55, 136 Ill.Dec. 653, 660, 545 N.E.2d 177, 184; Reagor v. Travelers Insurance Co., 92 Ill.App.3d at 105-06, 47 Ill.Dec. at 511, 415 N.E.2d at 516.) We therefore must next address defendants' contention on the merits that no duty to defend is present under the policies in question. If no duty to defend is present, an outright reversal without a remand would be warranted.
Initially, we must decide whether Illinois or California law governs the interpretation of these policies. The policies do not contain a choice of law provision, and as such, the general choice of law rules of the forum state, Illinois, control to determine the applicable law. Diamond State Insurance Co. v. Chester-Jensen Co. (1993), 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d 1083.
Defendants, citing Boise Cascade Home & Land Corp. v. Utilities, Inc. (1984), 127 Ill. App.3d 4, 82 Ill.Dec. 180, 468 N.E.2d 442, urge that a "most significant contacts" analysis applies to the case at hand. In this respect defendants argue that the events giving rise to coverage occurred in California, that the risk insured was a California risk, that the underlying litigation was filed in a California court. In response, plaintiffs, urging that the choice of law depends on where the contract was executed, argue Illinois law applies.
In Diamond State Insurance Co. v. Chester-Jensen Co. (1993), 243 Ill.App.3d 471, 486, 183 Ill.Dec. 435, 445-46, 611 N.E.2d 1083, 1093-94, we applied the "most significant contacts" analysis in determining which forum's law governed the interpretation of a comprehensive insurance policy. In so doing, *1287 we looked to the Illinois Supreme Court's holding in Hofeld v. Nationwide Life Insurance Co. (1975), 59 Ill.2d 522, 322 N.E.2d 454, where, in the context of a group health insurance policy, the court stated:
"[I]nsurance contract provisions may be governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a relationship to the general contract." 59 Ill.2d at 528, 322 N.E.2d at 457-58.
While all these factors must be considered in the choice of law analysis, the location of the insured risk is given special emphasis. As stated in the Restatement (Second) of Conflict of Laws § 193 (1971),
"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local laws of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."
This section recognizes that the "location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally in a single state." (Restatement (Second) of Conflict of Laws § 193, comment b, at 611 (1971).) This is so even where the policy in question covers multiple risks located in several states, as is the case here. (See Diamond State Insurance Co. v. Chester-Jensen Co., 243 Ill.App.3d at 489-90, 183 Ill.Dec. at 446-7, 611 N.E.2d at 1094-95; cf. Restatement (Second) of Conflict of Laws § 193, comment f (policy insuring against risks located in different states treated as separate policies each insuring a separate risk).
Plaintiffs argue that the use of the most significant contacts test would result in the law of several jurisdictions being applied to the same policy in this instance as the policies in question cover risks located in several states. They urge, instead, that the place where the insurance contract was executed should exclusively control the choice of law. The use of such a test which looks exclusively to only one factor could easily lead to the application of the law of a forum which lacked any significant contact with the dispute in question. We rejected the proposed application of a similar bright-line test which also, in effect, advocated the application of the law of the insured's home state in Diamond State v. Chester-Jensen, and see no persuasive reason to now adopt plaintiffs' unduly narrow test. 243 Ill.App.3d at 489, 183 Ill.Dec. at 447, 611 N.E.2d at 1095.
Applying the most significant contacts analysis, we conclude that California law governs the interpretation of the policies in question. Although these policies were executed in Illinois, all other significant factors favor the application of California law. Most importantly, the insured risk involved in this instance, Crespi High School, was located in California. (See Restatement (Second) of Conflict of Laws § 193 (1971); Allen v. State Farm Mutual Auto Insurance Co. (1991), 214 Ill.App.3d 729, 158 Ill.Dec. 261, 574 N.E.2d 55; see also Diamond State Insurance Co. v. Chester-Jensen Co., 243 Ill. App.3d at 489, 183 Ill.Dec. at 446-47, 611 N.E.2d at 1094-95; International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co. (1990), 209 Ill.App.3d 144, Dec. 9. 568 N.E.2d 9, 154 Ill.) Moreover, the underlying plaintiff was a California resident and the underlying action was brought in a California court against defendants who were predominately domiciled in California. (See International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co., 209 Ill.App.3d at 154-55,154 Ill.Dec. at 14, 568 N.E.2d at 14 (application of Arizona law deemed proper in action for punitive damages against an insured where the insured risk was located in Arizona and the insured was sued in Arizona); Boise Cascade Home and Land Corp. v. Utilities, Inc., 127 Ill.App.3d at 13, 82 Ill.Dec. at 187, 468 N.E.2d at 449; see also Diamond State Insurance Co. v. Chester-Jensen Co., 243 Ill.App.3d at 487, 183 Ill.Dec. *1288 at 446, 611 N.E.2d at 1094 (which in determining that the law of Illinois properly controlled, predicated its conclusion on the convergent facts that the policy was issued in Illinois, the insured risk was located in Illinois, that the underlying action was filed in Illinois courts, and that application of Illinois law was not contrary to Pennsylvania's public policy)).
We must now address whether defendants owe plaintiffs a duty to defend under California law for the allegations set forth in the Gabriel complaint. Under California law, "an insurer must defend an action which seeks damages potentially within the coverage of the policy." (American Guarantee & Liability Insurance Co. v. Vista Medical Supply (N.D.Cal.1988), 699 F.Supp. 787, 788; Hurley Construction v. State Farm (1992), 10 Cal.App.4th 533, 538, 12 Cal. Rptr.2d 629.) Doubt as to whether a duty to defend exists should be resolved in favor of the insured. (Gray v. Zurich Insurance Co. (1966), 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168; Alex Robertson Co. v. Imperial Casualty & Indemnity Co. (1992), 8 Cal. App.4th 338, 10 Cal.Rptr.2d 165.) The duty to defend is much broader than the duty to indemnify. Aetna Casualty & Surety Co. v. Superior Court (1993), 19 Cal.App.4th 320, 23 Cal.Rptr.2d 442; Loyola Marymount University v. Hartford Accident & Indemnity Co. (1990), 219 Cal.App.3d 1217, 271 Cal. Rptr. 528.
The duty to defend is measured at the outset of litigation "by comparing the allegations of the complaint with the terms of the policy." (Horace Mann Insurance Co. v. Barbara B. (1993), 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 213, 846 P.2d 792, 795.) The duty to defend is a "wide-ranging obligation[,] [h]owever, such duty, while broad is not unlimited" (Devin v. United States Auto Association (1992), 6 Cal.App.4th 1149, 1157, 8 Cal.Rptr.2d 263, 268), as it is "measured by the nature and kind of risks covered by the policy." (St. Paul Fire and Marine Insurance Co. v. Superior Court (1984), 161 Cal. App.3d 1199, 1202, 208 Cal.Rptr. 5, 7.) If an insurer has a duty to defend an action based on the assertion of one covered claim, the insurer must defend the entire action including non-covered claims. (Wong v. State Compensation Insurance Fund (1993), 12 Cal.App.4th 686, 16 Cal.Rptr.2d 1; Horace Mann Insurance Co. v. Barbara B., 4 Cal.App.4th at 1084, 17 Cal.Rptr.2d at 215-16, 846 P.2d at 797-98.) As such, we will compare the terms of the policies with the allegations of the Gabriel complaint to determine whether a duty to defend exists.
We begin with the comprehensive general liability policy which provides in pertinent part:
"The company [defendants] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury or * * * property damage to which the insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent."
As mentioned earlier, Gabriel's complaint alleges recovery under a variety of legal theories. The trial court based its determination that a duty to defend existed on the allegations contained in count IV of the complaint which alleges negligent infliction of emotional distress. This count claimed that "[d]efendants' negligent and tortious conduct in unjustifiably terminating the plaintiff's employment was outrageous and constituted an extreme invasion of the plaintiff's emotional and mental tranquility, causing the plaintiff extreme emotional distress, including worry, anxiety, embarrassment, loss of sleep and tension, resulting in some permanent disability [to him]." This count contains the Gabriel complaint's only allegations of negligence.
Defendants argue that Gabriel's discharge was not an "occurrence" under the terms of the aforementioned policy. The comprehensive business policy defines "occurrence" as "an accident, including the continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
*1289 It is well established that under California law, claims for wrongful termination do not come within the ambit of coverage offered by general comprehensive liability policies, which contain language identical to the policy in this case, because the intentional act of termination is not an "occurrence" under the terms of the policy.(See, e.g., Loyola Marymount v. Hartford Accident & Indemnity, 219 Cal.App.3d at 1224, 271 Cal.Rptr. at 531-32; Commercial Union Insurance Co. v. Superior Court (1987), 196 Cal.App.3d 1205, 242 Cal.Rptr. 454; St. Paul Fire and Marine Insurance Co. v. Superior Court, 161 Cal. App.3d at 1202, 208 Cal.Rptr. at 7.) California courts have consistently concluded that there is no coverage, and consequently no duty to defend, where the underlying complaint seeks recovery for damages resulting from a wrongful termination, even where the complaint alleges emotional distress as a result of that termination. See American Guarantee & Liability Insurance Co. v. Vista Medical Supply, 699 F.Supp. at 790; Loyola Marymount University v. Hartford Accident & Indemnity Co., 219 Cal.App.3d at 1225, 271 Cal.Rptr. at 532; Dyer v. Northbrook Property & Casualty Insurance Co. (1989), 210 Cal.App.3d 1540, 259 Cal.Rptr. 298; St. Paul Fire and Marine Insurance Co. v. Superior Court, 161 Cal.App.3d at 1202, 208 Cal.Rptr. at 7.
We recognize that the Gabriel complaint also alleges negligent conduct. However, California courts routinely look beyond the pleadings to determine if the allegations of negligence contained therein are based on separate negligent acts, or are just merely intentional acts which have been labeled as negligent. (See, e.g., Chamberlain v. Allstate Insurance Co. (9th Cir.1991), 931 F.2d 1361, 1365 (factual core of complaint alleged intentional acts by the insured); American Guarantee & Liability Insurance Co. v. Vista Medical Supply, 699 F.Supp. at 790-91 (no duty to defend for negligent misrepresentation as damages arose from the intentional act of termination and, as such, no occurrence was present); Hartford Fire Insurance Co. v. Karavan Enterprises, Inc. (N.D.Cal.1986), 659 F.Supp. 1075, 1077 (claim for negligent conduct must be treated analytically as an integral part of the assertedly wrongful discharge and does not constitute an accident).
Here Gabriel's complaint seeks recovery for negligent infliction of emotional distress. However, the complaint sets forth no negligent acts or any facts from which such negligence can be inferred. Rather, the acts upon which that count is based are the very same acts which underlie every other count of the Gabriel's complaint, the intentional discharge. Thus, the count alleging negligent infliction of emotional distress does not constitute an occurrence or accident under the terms of the comprehensive general liability policy, and the trial court was incorrect in so finding.
While coverage for injuries resulting from wrongful termination does not exist under plaintiffs' comprehensive business or general liability policy, coverage may exist under the workers' compensation and employer's liability insurance policy. Injuries arising from termination of employment ordinarily arise out of and occur in the course of employment (Shoemaker v. Myers (1990), 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054) and, thus, are covered by workers' compensation insurance whether the injuries are physical, emotional, or both, as long as they are disabling and compensable. (Livitsanos v. Superior Court (1992), 2 Cal.4th 744, 7 Cal.Rptr.2d 808, 828 P.2d 1195.) Unless the employer's conduct violates an express statute, contravenes fundamental public policy (B & E Convalescent Center v. State Compensation Insurance Fund (1992), 8 Cal. App.4th 78, 9 Cal.Rptr.2d 894) or exceeds the risks inherent in the employment relationship (Cole v. Fair Oaks Fire Protection District (1987), 43 Cal.3d 148, 233 Cal.Rptr. 308, 729 P.2d 743), a discharged employee's claim for compensation based on injuries that resulted from the employer's intentional or negligent infliction of emotional distress is subsumed under the exclusive remedy provisions of workers' compensation law. Litvitsanos v. Superior Court; Shoemaker v. Myers (1990), 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054.
*1290 In reliance on the cases mentioned above, the California court more recently in Wong v. State Compensation Insurance Fund (1993), 12 Cal.App.4th 686, 16 Cal. Rptr.2d 1[1] held that actions for wrongful termination of employment, which include claims for emotional distress, are subject to the exclusivity provisions of workers' compensation. In Wong, as in the instant case, the workers' compensation policy applied "to bodily injury by accident or bodily injury by disease" (12 Cal.App.4th at 690, 16 Cal. Rptr.2d at 2). Nevertheless, the court held that the alleged conduct was "clearly the sort that normally occurs in the workplace and necessarily arises out of and in the course of an employment relationship," such that workers' compensation provided the sole and exclusive remedy for any personal injury resulting from the discharge. Wong, 12 Cal. App.4th at 695, 16 Cal.Rptr.2d at 6; see also Shoemaker v. Myers (1990), 52 Cal.3d at 15, 276 Cal.Rptr. at 311, "if the injuries did arise out of and in the course of the employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from the intentional conduct of the employer."
Despite the civil nature of the plaintiff's actions in Wong, the court held that the insurer had a duty to defend the employer since the civil action potentially sought damages within the coverage of the workers' compensation and employer's liability policy. The court found that the employee could not attempt to renounce workers' compensation remedies by bringing a civil action alleging wrongful termination nor could the insurer rely on the employee's forum choice to escape its duty to defend under the workers' compensation insurance provisions. As the Wong court stated:
"Such potential liability is all that is needed to trigger State Fund's duty to defend.
* * * Moreover, as a general rule, a duty to defend necessarily includes an obligation to assert any and all affirmative defenses available to a defendant. Thus, given State Fund's potential liability under the workers' compensation section of the policy, Wong could reasonably have expected State Fund to assert the bar of workers' compensation as an affirmative defense in the underlying [civil] case." 12 Cal.App.4th at 695-96, 16 Cal.Rptr.2d at 6.
As in Wong, the facts in the instant case show that Gabriel's complaint for wrongful termination sought damages for injuries which included physical injuries that resulted from his employers' alleged infliction of emotional distress. This claim presented a potential liability under the workers' compensation and employer's liability policy issued by defendants, and, thus, defendants had a duty to defend that entire action "unless and until [it was] able to limit the complaint to theories for which it ha[d] provided no insurance." Wong, 12 Cal.App.4th at 693-94, 16 Cal. Rptr.2d at 4.
Our decision that the defendants had a duty to defend the plaintiffs is, of course, contingent upon a finding that the plaintiffs who were named as defendants in Gabriel's complaint were insureds under the workers' compensation insurance policy issued by the defendants. (See Alex Robertson Co. v. Imperial Casualty & Indemnity Co. (1992), 8 Cal.App.4th 338, 10 Cal.Rptr.2d 165 (no duty to defend entity not insured under policy); National Automobile & Casualty Insurance Co. v. Stewart (1990), 223 Cal.App.3d 452, 272 Cal.Rptr. 625 (no coverage under policy for nonowned automobiles; thus, no potential for liability and consequently no duty to defend).) Gabriel's five-count complaint named as defendants the Fathers of the Order of Mount Carmel, Inc., Crespi High School, Carmelite Father John Knoernschild and Carmelite Father Joe Atcher. The insurance policies in question were issued to the Society of Mount Carmel and/or the Carmelite Fathers. The Society of Mount Carmel and/or the Carmelite Fathers is an Illinois *1291 corporation. The Fathers of the Order of Mount Carmel, Inc. is a California not-forprofit corporation. Crespi High School is a parochial high school located in California, wholly owned and operated by the Fathers of the Order of Mount Carmel, Inc. Carmelite Fathers John Knoernschild and Joe Atcher are residents of California.
Throughout the proceedings, the defendant insurers argued that the California defendants were not insured under the policies issued to the Society of Mount Carmel and/or the Carmelite Fathers. It is clear from the record, however, that the arguments of the parties in the instant action centered on the comprehensive business policy and the comprehensive general liability provisions of that policy. Reference to the workers' compensation insurance, by either of the parties, was minimal. Plaintiffs' alleged the existence of the workers' compensation and employer's liability policy in their declaratory judgment action and did attach to their complaint a copy of that policy as well as a copy of a letter from the defendant insurers which denied coverage under the comprehensive business policy but stated that coverage could exist under the workers' compensation policy. Defendants' only argument with respect to the workers' compensation and employer's liability policy occurred in their response to plaintiffs' motion for summary judgment. At that time defendants briefly stated that Gabriel's complaint did not "allege violation of California worker's compensation laws and defendants have no duty to defend the underlying lawsuit by reason of the worker's compensation laws."
When the trial court granted summary judgment to the plaintiffs in the instant action, the court did so based solely upon its interpretation of the comprehensive general liability provisions of the comprehensive business policy. The court held that Crespi High School was specifically named in the schedule of premises and operations made a part of the comprehensive general liability coverage and that some of the other plaintiffs operated that high school. The court noted that the schedule listed various operations in widely scattered geographical locations and that the activities alleged in the California complaint occurred at or on the premises listed on that schedule. It is clear from the transcript of the hearing that the trial court did not consider the workers' compensation and employer's liability policy and did not make any findings regarding the issue of coverage for the California defendants under the latter policy.
In this appeal, the defendant insurers argue that the plaintiffs should not be allowed to show that the California defendants were insured under the workers' compensation policy since none of their prior pleadings, filed in federal court or in the instant state court proceedings, attempted to make such a showing. We do not agree. In May of 1990, at the time the plaintiffs filed their declaratory judgment action in the state court, many of the California cases extending workers' compensation benefits to injuries arising from wrongful termination had not been decided. While plaintiffs could have amended their complaint to allege with greater specificity that the California defendants were additional insureds under the workers' compensation policy issued by the defendant insurers, such an attempt may have been futile. (See D.P. v. M.J.O. (1994), 266 Ill.App.3d 1029, 1035-1036, 203 Ill.Dec. 950, 954-955, 640 N.E.2d 1323, 1327-1328 and Stamp v. Batastini (1993), 263 Ill.App.3d 1010, 201 Ill.Dec. 184, 636 N.E.2d 616 (plaintiffs allowed to amend complaint on remand where earlier attempts in trial court would have been futile); accord Val's Painting & Drywall, Inc. v. Allstate Insurance Co. (1975), 53 Cal.App.3d 576, 126 Cal.Rptr. 267.) Moreover, there was no reason for plaintiffs to amend their complaint with respect to the workers' compensation and employer liability insurance coverage since the trial court had granted plaintiffs' motion for summary judgment on another ground. Since we now find on appeal that the summary judgment was erroneously granted based on coverage under the comprehensive general liability provisions, and that plaintiffs may be entitled to summary judgment based upon an alternative theory, the right to recover under that alternative theory, based upon pleadings amended on remand, must be established in the court below. (See In re Estate of Pirie (1986), 141 Ill.App.3d 750, 97 Ill.Dec. 225, 492 *1292 N.E.2d 884 (remand by appellate court allowing plaintiff to amend pleadings and retry case where plaintiff's pleaded theory held invalid for first time on appeal); accord Val's Painting & Drywall, Inc. v. Allstate Insurance Co.) Therefore, we must remand to the trial court the issue of whether the plaintiffs named as defendants in Gabriel's California complaint were insureds under the workers' compensation and employer's liability insurance policy issued by the defendant insurers. If they were insured, then, for the reasons stated above, the defendant insurers owed a duty to defend and breached that duty; and the plaintiffs in the instant action were entitled to summary judgment on that basis.
As a consequence of our decision that there may be a duty to defend, we also must address issues raised by the plaintiffs' appeal regarding the defendants' duty to indemnify, including plaintiffs' estoppel argument, and the trial court's denial of plaintiffs request for attorney fees incurred in the bringing of this declaratory judgment action.
With respect to plaintiffs' estoppel claim, we note that under California law discussed above a duty to defend will arise where the underlying complaint filed against the insured alleges facts which are within, or potentially within, the coverage of the policy. While an insurer has a duty to defend, it may not have a duty to indemnify. See, e.g., Gray v. Zurich Insurance Co. (1966), 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168; Republic Indemnity Co. v. Superior Court (1990), 224 Cal.App.3d 492, 273 Cal.Rptr. 331; Ohio Casualty Insurance Co. v. Hubbard (1984), 162 Cal.App.3d 939, 944, 208 Cal.Rptr. 806, 809 ("`[a]n insurer is not absolved from its duty to defend the lawsuit merely because it is forbidden by law or contract to indemnify the liability-causing action. [Citation; emphasis in original]'.")
Furthermore, while the insurer must defend the underlying action, it will not be estopped at a later date from claiming noncoverage under the indemnity provisions of the policy if it has reserved its right to do so by securing a nonwaiver agreement from the insured or making a reservation of rights disclaiming liability to the insured. (Insurance Co. of the West v. Haralambos Beverage Co. (1987), 195 Cal.App.3d 1308, 241 Cal. Rptr. 427; Val's Painting and Drywall, Inc. v. Allstate Insurance Co. (1975), 53 Cal. App.3d 576, 126 Cal.Rptr. 267.) If the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment entered against the insured in the underlying action. (See Gray v. Zurich Insurance Co.) However, when the insurer wrongfully refuses to defend, it is estopped from denying liability under the policy at a later date. (Gray v. Zurich Insurance Co.) In this respect, California law and Illinois law are in full accord. See Murphy v. Urso (1981), 88 Ill.2d 444, 58 Ill.Dec. 828, 430 N.E.2d 1079; Insurance Co. of Pennsylvania v. Protective Insurance Co. (1992), 227 Ill.App.3d 360, 169 Ill.Dec. 630, 592 N.E.2d 117 (insurer's unreasonable delay in seeking declaratory judgment as to its obligations to defend and failure of insurer to defend the underlying action under a reservation of rights estops insurer from raising policy exclusions or noncoverage as a defense in any subsequent action brought to recover policy proceeds).
In the instant case, the defendant insurers did not seek a judicial determination regarding their obligation to defend the underlying California action and did not defend that action under a reservation of rights. Defendants refused to defend the lawsuit and thus would be estopped from raising noncoverage as a defense under the indemnity provisions of the policy should the court on remand find that the defendants owed a duty to defend the plaintiffs who were California defendants in the underlying action. See Gray v. Zurich Insurance Co.; Arenson v. National Automobile & Casualty Insurance Co. (1957), 48 Cal.2d 528, 310 P.2d 961; accord J G Industries, Inc. v. National Union Fire Insurance Co. (1991), 218 Ill.App.3d 1061,161 Ill.Dec. 613, 578 N.E.2d 1259; MIA Com, Inc. v. Perricone (1989), 187 Ill.App.3d 358, 134 Ill.Dec. 945, 543 N.E.2d 228 (doctrine of estoppel arises only where a duty to defend has been breached by insurer).[2]
*1293 We next turn to plaintiffs' appeal of the September 7, 1990 order which denied their request for attorney fees incurred in bringing this declaratory judgment action. As previously noted, the award of any attorney fees in this situation was wholly predicated upon the presence of a duty to defend. Assuming a duty to defend based on California workers' compensation law discussed above, the plaintiffs proper measure of damages for breach of that duty would include the amount of the judgment in the underlying action (Tomerlin v. Canadian Indemnity Co. (1964), 61 Cal.2d 638, 39 Cal.Rptr. 731, 394 P.2d 571), even where that judgment is not rendered on a theory within the policy coverage, as well as all costs, expenses and attorney's fees incurred in defending that suit. Gray v. Zurich Insurance Co.; Arenson v. National Automobile & Casualty Insurance Co.
Plaintiffs argue that they also are entitled to attorney fees incurred in bringing this declaratory judgment action. While not cited by the parties to the instant appeal, we note that, in accordance with California case law,
"attorneys' fees incurred by an insured, whether in the capacity of a plaintiff seeking a declaration of his rights under the policy, or as a defendant in a declaratory relief action brought by his insurer, are the burden of the insured, and in the absence of some special statute or particular provision in the policy must be borne by the insured." (Carroll v. Hanover Insurance Co. (1968), 266 Cal.App.2d 47, 51, 71 Cal. Rptr. 868, 871.)
(See also Lowell v. Maryland Casualty Co. (1966), 65 Cal.2d 298, 54 Cal.Rptr. 116, 419 P.2d 180.)[3] A necessary predicate to an award of fees against an insurer and in favor of a prevailing insured in a declaratory relief action is a finding of bad faith on the part of the insurer. Brandt v. Superior Court (1985), 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796; United Services Automobile Association v. Dalrymple (1991), 232 Cal.App.3d 182, 283 Cal.Rptr. 330.
As in California,[4] a significant body of Illinois case law holds that "an insured *1294 may not recover fees and costs for bringing a declaratory judgment action against the insurer in the absence of a showing of vexatiousness." Brotherhood Mutual Insurance Co. v. Roseth (1988), 177 Ill. App.3d 443, 453, 126 Ill.Dec. 669, 675, 532 N.E.2d 354, 360 (emphasis original); see also Tuell v. State Farm Fire & Casualty Co. (1985), 132 Ill.App.3d 449,87 Ill.Dec. 469, 477 N.E.2d 70; Preferred Risk Mutual Insurance Co. v. U.S. Fidelity & Guaranty Co. (1979), 77 Ill.App.3d 266, 32 Ill.Dec. 799, 395 N.E.2d 1180; Reis v. Aetna Casualty & Surety Co. (1978), 69 Ill.App.3d 777, 25 Ill. Dec. 824, 387 N.E.2d 700; Brown Bag Co. v. Bituminous Casualty Corp. (1969), 117 Ill. App.2d 287, 254 N.E.2d 577; Country Mutual Insurance Co. v. Murray (1968), 97 Ill. App.2d 61, 239 N.E.2d 498.
Plaintiffs ask this court to follow the Fifth District's decision in Trovillion v. U.S. Fidelity & Guaranty Co. (1985), 130 Ill.App.3d 694, 86 Ill.Dec. 39, 474 N.E.2d 953, which awarded to the prevailing insured attorneys fees incurred in bringing the declaratory judgment action. (See also National Cycle, Inc. v. Savoy Reinsurance Co. (7th Cir.1991), 938 F.2d 61; Green v. J.C Penney Auto Insurance Co. (7th Cir.1986), 806 F.2d 759.) Subsequent to Trovillion, our District and Division, reaffirmed its reliance on the substantial case law to the contrary in Brotherhood Mutual Insurance Co. v. Roseth. There, this court stated that "it is well settled that an insured may not recover fees and costs for bringing a declaratory judgment action against the insured in the absence of a showing of vexatiousness." (177 Ill.App.3d at 453, 126 Ill.Dec. at 675, 532 N.E.2d at 360 (emphasis original).) This rule denying the award of fees is consistent with the general rule that the successful party may not recover attorneys fees or costs in the absence of a statute or an agreement between the parties to that effect. (Kerns v. Engelke (1979), 76 Ill.2d 154, 28 Ill.Dec. 500, 390 N.E.2d 859; Hamer v. Kirk (1976), 64 Ill.2d 434,1 Ill.Dec. 336, 356 N.E.2d 524.) In view of the substantial precedent, we would decline to follow Trovillion v. United States Fidelity and Guaranty Co. and would conclude that the plaintiffs were not entitled to attorney fees incurred in their prosecution of this declaratory judgment action either under California or Illinois law. The trial court's denial of fees with respect to the declaratory judgment action was correct.
For the foregoing reasons the judgment of the circuit court is affirmed in part and reversed in part. This cause is remanded to the trial court to grant plaintiffs leave to amend their complaint to add Larry Gabriel as a necessary party, to allege with specificity coverage under the workers' compensation and employer's liability policy, and to allege their estoppel argument.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
COUSINS, Jr., concurs.
MURRAY, P.J., dissents.
Presiding Justice MURRAY, dissenting:
I respectfully dissent with the majority opinion and would affirm the able trial judge's opinion for the reason that the failure to join Gabriel as a party was not error, even if he were a necessary or proper party. Ill. Rev.Stat.1991, ch. 110, par. 2-407.
The majority fails to distinguish between necessary, proper and indispensable. Gabriel became indispensable only if the action involved the insurance companies' duty to indemnify, which it did not. Further, it is not clear from the majority opinion whether California law or Illinois law should apply. The insurance policies in this case were issued in Illinois and covered premises and parties in Chicago, Tucson, California, Indiana, Kansas and Maine. If the defendant insurance companies wanted California law to apply, they could have done so by providing it in their policies. I would affirm the able trial judge totally.
NOTES
[1] Subsequently, the California appellate court decided La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co. (1993), 19 Cal.App.4th 358, 23 Cal.Rptr.2d 656, review granted (1994), 27 Cal.Rptr.2d 488, 866 P.2d 1311, which also held that the insurer had a duty to defend a civil action for wrongful termination because included in that action was a claim for intentional infliction of emotion distress and that claim presented a potential claim covered by the workers' compensation policy. As the California Supreme Court has granted review, in accordance with the rules of that court, this case is not citable while the review is pending.
[2] The defendant insurers argue that they should not be estopped from raising noncoverage as a defense because of their failure to defend. While previously arguing that California law should apply to the instant action, with respect to the issue of the duty to defend, defendants have relied on Illinois case law in support of their estoppel argument. Defendants argue that based on Thornton v. Paul (1978), 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335, a conflict of interest existed between them and the plaintiffs who were defendants in the underlying action with respect to the claim for negligent infliction of emotional distress. Defendants state that, had they defended the plaintiffs in the California action, they would have sought dismissal of the negligence count, the only count for which coverage under the policy could have existed.

A similar conflict of interest argument was rejected by the California court in Gray v. Zurich Insurance Co. (1966), 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168. In Gray, in the underlying action, the insured was alleged to have committed an intentional assault. The defendant insurer refused to defend on the ground that intentional torts were excluded from coverage. In the subsequent action by the insured against the insurer for failure to defend, the insurer argued that had the insurer provided a defense to the insured in the underlying action, it would have sought to establish that the insured was free from liability or that the insured's conduct was intentional. It further argued that the insured would have sought a verdict holding him not liable or, if found liable, that such liability emanated from nonintentional conduct so that coverage would exist under the insurance policy. In rejecting this argument, the court stated that the insurer and the insured would not have conflicting interests in the underlying action since both seek to avoid, or at least minimize, the insured's liability. Additionally, the court noted that "[i]n any event, if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment." 65 Cal.2d at 279, 54 Cal.Rptr. at 114.
[3] Attorneys fees were awarded to a prevailing insured in a declaratory relief action in Knatt v. California State Automobile Association Inter-Insurance Bureau (1981), 123 Cal.App.3d 115, 176 Cal.Rptr. 420. However, in denying hearing, the California Supreme Court ordered that the Court of Appeal's opinion not be officially published.
[4] In the instant appeal, the parties have argued Illinois case law on the issue of whether a prevailing insured in a declaratory judgment action against the insurer is entitled to attorneys fees incurred in bringing that action. While California law may be the more appropriate law to apply, we note that, under conflict of law principles, when the parties have failed to provide information as to the applicable foreign law, the forum will decide the case in accordance with its own local law. (Restatement (Second) of Conflict of Laws § 136, comment h, at 378-79 (1971).) Regardless of the choice of law, however, as noted in the text of this opinion, the resultant denial of an award of attorneys fees would be the same.