**ZURICH INSURANCE COMPANY,**
**Plaintiff,**

v.

**SUNCLIPSE, INC., Defendant.**

**No. 98 C 1152.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 19, 2000.

Ellen B. Van Vechten, Smith, Williams & Lodge, Chicago, IL, Marlene Ann Kurilla, Fred A. Smith, III, Frank Joseph Marsico, Sedgwick, Detert, Moran & Arnold, Chicago, IL, for Zurich Insurance Company, plaintiff.

Duane F. Sigelko, Henry Pietrkowski, Sachnoff & Weaver, Ltd., Chicago, IL, Edward W. Smithers, Law Offices of Edward W. Smithers, San Jose, CA, for Sunclipse, Inc., defendant.

Edward W. Smithers, Law Offices of Edward W. Smithers, San Jose, CA, Henry Pietrkowski, Sachnoff & Weaver, Chicago, IL, for Sunclipse, Inc., counter-claimant.

Ellen B. Van Vechten, Smith, Williams & Lodge, Chicago, IL, Marlene Ann Kurilla, Fred A. Smith, III, Frank Joseph Marsico, Sedgwick, Detert, Moran & Arnold, Chicago, IL, for Zurich Insurance Company, counter-defendant.

## MEMORANDUM OPINION AND ORDER

PALLMEYER, District Judge.

Plaintiff Zurich Insurance Company ("Zurich" or "Insurer") seeks a declaration that it had no duty to defend or indemnify Defendant Sunclipse, Inc. ("Sunclipse" or "Insured") for the defense costs incurred and the settlement reached in an unfair competition case filed against Sunclipse by Century Container Corp. ("Century"). In the underlying action, Century sought damages from Sunclipse resulting from the alleged misappropriation of proprietary information concerning the manufacture of conductive surface coating for corrugated boxes. Century claimed that Sunclipse's manufacture and sale of its own coating violated the terms of an agreement by which Century licensed its coating process to Sunclipse.

Zurich claims it is not required to defend Sunclipse against Century's allegations and now seeks summary judgment. Zurich contends that Sunclipse did not provide prompt notice of the underlying action as required by the insurance policy, and that the subject insurance policy does not cover the alleged injuries. Sunclipse filed a cross motion for summary judgment. Sunclipse asserts that California law applies, and under that law Zurich may not assert the delay in notice defense because it cannot show prejudice from the delay. Sunclipse argues, further, that the underlying action involved an "advertising injury" which is covered under the policy. For the reasons set forth below, Zurich's motion for summary judgment is granted and Sunclipse's motion is denied.

### FACTUAL BACKGROUND

#### A. The Parties

Sunclipse, a California corporation which maintains its principal place of business in that state, is a wholly-owned subsidiary of Amcor Limited ("Amcor"), a multinational integrated packaging and paper company with its headquarters in Australia. (Sunclipse 12(M) ¶¶ 1, 2.) Sunclipse is involved in the manufacture and sale of corrugated products made from liner board or sheet stock. (Zurich 12(M) ¶ 16.) Sunclipse manufactures Corru–Shield, an electrostatic discharge ("ESD") container designed to protect packaged electronic devices from static electricity. (*Id.* ¶ 17.) Sunclipse's facilities are located in several California communities,[1] and it services the

---

1. Under the 1994–95 Zurich Policy, seventeen of nineteen covered Sunclipse locations were

California market for corrugated packaging. (Sunclipse 12(M) ¶ 13.) It maintains no office, has no property, and has no employees in Illinois. (*Id.*)

At the time of the issuance of the subject insurance policies, Zurich was the United States branch of a Swiss corporation. (Zurich 12(M) ¶ 1.) During the relevant time period, Zurich maintained its principal administrative offices in Schaumburg, Illinois and was licensed to and did transact business in Illinois. (*Id.* ¶ 2.)

## B. The Insurance Policies

Between November 1, 1992 and November 1, 1995, Zurich issued three one-year Commercial General Liability insurance policies ("the Policies") to Sunclipse. Each policy provided coverage for personal and advertising injury with a limit of $1 million. (Sunclipse 12(M) ¶ 6; Zurich 12(M) ¶¶ 4–6.) Each of the Policies lists Sunclipse, Inc. as the Named Insured with a California mailing address. (Sunclipse 12(M) ¶ 7; Exs. A, B, C to Affidavit of Steven Sheldon [2] in Support of Zurich's Mot. for Summ. J.) On the declarations page of each of the Policies, "Glendale, CA" is designated as the "Service Office" for the Policy [3] and each of the Policies contains a California amendatory endorsement regarding cancellation and renewal. (*Id.*) Each of the Policies was delivered to Sunclipse's broker, Alexander & Alexander of California, Inc. ("A & A California") at its offices in Pasadena, California. (Sunclipse 12(M) ¶ 8.) Amcor arranged the issuance of the Policies as part of an integrated insurance program for all of Amcor's subsidiaries throughout the world, including Sunclipse. (*Id.* ¶ 9.) Several substantive communications about the Policies and at least one meeting regarding the Policies issued to Sunclipse took place between A & A California and the offices of Zurich International U.S. West located in Glendale, California ("Zurich's Glendale Office"). (*Id.* ¶¶ 10–11.) Sunclipse remitted premium payments to A & A California and Zurich presumably accepted such payments from A & A California.[4] (*Id.* ¶ 12.)

Each of the Policies contained a provision describing the coverage for personal and advertising injury. The relevant provision reads as follows:

### COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages[.]

b. This insurance applies to: ...

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

(Sunclipse 12(M) ¶ 14; Exs. A, B, C to Sheldon Aff.) The Policies define "Advertising injury" as:

---

in California. (Sunclipse 12(M) ¶ 13.) The other two Sunclipse offices covered under this policy were in Atlanta, Georgia and St. Louis, Missouri. (Ex. 46 to Sunclipse 12(M).)

2. Steven Sheldon is a claims representative at Zurich–American Insurance Company. (Sheldon Aff. ¶ 1.)

3. Zurich denies that the Policies designate Zurich's Glendale, California office as "the" service office for Sunclipse. Instead, Zurich contends that the designation of a service office refers only to the underwriting function performed by Zurich's field underwriting office in Glendale, California. (Zurich 12(N) ¶ 7.)

4. Zurich contends that the premium invoices directed Sunclipse to send payments to Zurich at a post office box in Chicago, Illinois. (Zurich 12(N) ¶ 12.) However, copies of premium invoices in the record do not reflect such directive.

injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations' goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

(*Id.*) The Policies also exclude certain "personal" and "advertising" injuries from coverage. Specifically, the Policies exclude coverage for " 'Advertising Injury' arising out of . . . Breach of contract, other than misappropriation of advertising ideas under an implied contract[.]" (Zurich 12(M) ¶ 10.) The Conditions section of the Policies contain the following duties of the insured in the event of an occurrence, claim or suit:

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

(*Id.* ¶ 7.) Each of the Policies was signed by Zurich's United States Manager, Secretary and President, all of whom are located at the Schaumburg, Illinois offices. (*Id.* ¶ 12.) The Policies further provided that "[y]our agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following: Zurich–American Insurance Group, Customer Inquiry Center, 1400 American Lane, Schaumburg, Illinois 60196–1056." (*Id.* ¶ 13.)

## C. The Underlying Action

Century is an Illinois corporation which manufactures graphite conductive surface coatings for application to liner board or corrugated sheet stock under the trade name "Centurian." (Zurich 12(M) ¶ 14.) The coated material is used to make electro-static discharge ("ESD") containers designed to protect electronic devices from static electricity. (*Id.*) Century supplies its products to companies that manufacture corrugated products, including Sunclipse. (*Id.* ¶ 15.) Century and Sunclipse entered into two separate license agreements in February and July of 1993. (*Id.* ¶¶ 18, 20.) Both agreements provided that "SUNCLIPSE agrees not to manufacture, distribute or sell any corrugated products having a conductive surface coating purchased from any source other than CENTURY . . . during the term of this license." [5] (*Id.*) The July agreement superceded the February agreement. (Sunclipse 12(M), Ex. 23, at 4, 10.)

On March 20, 1995, Century filed a lawsuit in the United States District Court for the Northern District of Illinois, charging Sunclipse with misappropriation of trade secrets and breach of contract. (Zurich 12(M), Ex. A to Aff. of Sharon R. Terris [6] in Support of Zurich's Mot. for Summ. J.) In its second amended complaint, filed on May 12, 1995, Century stated four claims:

---

5. The February Agreement restricted this prohibition to an area within 250 miles of Sunclipse's manufacturing plaint in Union City, California. (Zurich 12(M) ¶ 18.) The July Agreement restricted this prohibition to an area encompassing the state of California. (*Id.* ¶ 20.)

6. Ms. Terris is an attorney with the law firm of Sedgwick, Detert, Moran & Arnold, and is counsel for Zurich. (Terris Aff. ¶ 1.)

(1) misappropriation of trade secrets; (2) breach of contract; (3) unjust enrichment; and (4) punitive damages. (Sunclipse 12(M) ¶ 16.) Century alleged that its president, Arthur J. Castellano ("Castellano") met with Robert Vermillion ("Vermillion"), a prospective employee, in December 1993. (Zurich 12(M) ¶ 23.) During those meetings, Castellano allegedly discussed Century's license agreement with Sunclipse and allegedly disclosed confidential and proprietary information and trade secrets regarding the graphite conductive surface coatings. (*Id.*) The second amended complaint further alleged that Corru–Kraft, a division of Sunclipse, subsequently hired Vermillion in March 1994 as its manager of ESD corrugated sales and product development. (*Id.* ¶ 25.) Century also alleged that sometime thereafter, Sunclipse began selling corrugated sheet stock having a conductive surface coating not purchased from Century, and in violation of their license agreement. (*Id.* ¶¶ 27–28.) Indeed, after some factual discovery in the underlying action, it came to light that Corru–Kraft intentionally developed and began marketing its own ESD product, Corru–Shield, to compete with Centurian. (Terris Aff., Ex. I, at 2.)

Century's misappropriation of trade secrets claims alleged the following: "The selling of liner board for use in corrugated sheet stock having a conductive surface coating by Sunclipse constitutes misappropriation of plaintiff's proprietary and confidential information, including its trade secrets, causing plaintiff damage and irreparable harm." (Sunclipse 12(M), Ex. 13 ¶ 11.) Century's Breach of Contract count claimed that the alleged misappropriation and use of Century trade secrets and Sunclipse's failure to purchase the coatings from Century constituted a breach of the license agreement, and that Sunclipse's use of conductive coatings not purchased from Century further violated the license agreement. (*Id.* ¶¶ 13–14.) Century incorporated the misappropriation of trade secrets claim into its breach of contract claim. (*Id.* ¶ 12.) Finally, incorporating its breach of contract claim, Century further alleged that Sunclipse's use of its own coatings in place of Century's product to customers referred by Century constitutes unjust enrichment. (*Id.* ¶¶ 15–16.) Century's theory was that Sunclipse had misused the customer leads Century had supplied to Sunclipse by substituting the sale of Centurian with the sale of its own ESD product, Corru–Shield. (Sunclipse 12(M) ¶ 18.)

After some discovery, Sunclipse moved unsuccessfully for summary judgment on all counts of the complaint. Thereafter, settlement discussions began and continued from October 7, 1997 through March 27, 1998. (*Id.* ¶¶ 35–39.) After several hours of a court-sponsored negotiation, the parties agreed to settle the case for $1 million. (*Id* ¶ 41; Zurich 12(N) ¶ 41.)

## D. Tender to Zurich and The Present Action

On June 17, 1997, Sunclipse sent a letter to its broker, A & A California, informing A & A of the then-pending suit by Century. (Sunclipse 12(M), Ex. 48.) The letter asked A & A California to "contact the carrier and advise them of this pending claim." (*Id.*) On September 24, 1997, Sunclipse followed up on this notice with another letter to A & A California regarding the underlying action. (*Id.*, Ex. 49.) Zurich denies having any knowledge of the dispute between Century and Sunclipse until receipt of the September 24, 1997 letter (Zurich 12(M) ¶ 41), which it acknowledged by letter dated October 1, 1997 to Sunclipse's counsel. (Sunclipse 12(M) ¶ 46.) On November 3, 1997, Sunclipse's counsel provided Zurich with copies of the original complaint, amended complaint, and second amended complaint from the underlying action and informed Zurich that a December 2, 1997 trial date was pending, explained that discovery had taken place, and provided copies of correspondence exchanged by the parties re-

garding Century's settlement demand.[7] (Sunclipse 12(M) ¶ 47; Zurich 12(N) ¶ 47.)

On February 11, 1998, Zurich denied the claim and declined to indemnify or defend Sunclipse in connection with the Underlying Action. (Zurich 12(M) ¶ 45; Sunclipse 12(M) ¶ 49.) Zurich advised Sunclipse's counsel that Sunclipse had the right to dispute Zurich's coverage position with the California Department of Insurance. (Sunclipse 12(M) ¶ 49.) On February 24, 1998, Zurich filed this suit, seeking a declaration that Zurich had no duty to indemnify Sunclipse because Century did not allege any claim in the Underlying Action that falls within the coverage of the Policies, and because Sunclipse did not give Zurich prompt notice of the Underlying Action. (Zurich 12(M) ¶ 47; Sunclipse 12(M) ¶ 50.) Sunclipse counterclaimed requesting a finding that Century had alleged claims constituting "advertising injury," giving rise to Zurich's duty to defend and indemnify Sunclipse under the insurance Policies. (Sunclipse 12(M) ¶ 51.)

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). See also Flores v. Preferred Technical Group, 182 F.3d 512, 514 (7th Cir.1999). It is also the movant's burden to establish the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether that burden has been met, the court must examine the evidence and draw all reasonable inferences in favor of the nonmovant, and must resolve factual disputes in the nonmovant's favor as well. See Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 291 (7th Cir.1998), cert. denied, — U.S. ——, 119 S.Ct. 336, 142 L.Ed.2d 277 (1998) (citations omitted). When considering cross-motions for summary judgment, the court considers the motions simultaneously, "extend[ing] to each party the benefit of any factual doubt when considering the other's motion." Buttitta v. City of Chicago, 803 F.Supp. 213, 217 (N.D.Ill.1992), aff'd 9 F.3d 1198 (7th Cir.1993). This "Janus-like perspective ... sometimes forces the denial of both motions," but only where there are material facts in dispute. See id. Summary judgment may be awarded to insurers in declaratory judgment actions when, as a matter of law, the insurance policy does not cover the underlying claim. See e.g. Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968 (9th Cir.1994) (affirming decision of district court judge granting summary judgment to insurer on duty to defend claim).

### B. Applicable Law

Before reaching the merits of the case, the court must first determine whether Illinois or California law applies. Zurich urges the court to apply Illinois law. The crux of Zurich's argument is that under Illinois' most significant contacts approach, the insured risk is located in Illinois because the allegations in the underlying action stem from injuries sustained by Century in Illinois. According to Zurich, the fact that Century filed the underlying action in Illinois bolsters the conclusion that the subject matter of the Policies is in Illinois. Sunclipse argues that California

---

7. The parties dispute the content of the conversation between Sunclipse's counsel and Zurich's claim case-manager, Dawn Goldhirsh. For example, Sunclipse asserts that Sunclipse's counsel told Goldhirsh that a previously scheduled trial date had been vacated, and no new trial date had been scheduled. (Sunclipse 12(M) ¶ 47.) On the other hand, Zurich asserts that Sunclipse's counsel told Goldhirsh that the trial date of December 2, 1997 might be continued. (Zurich 12(N) ¶ 47.) This dispute of fact is not material to the outcome of this case.

law should apply to the case. Under Illinois choice of law rules, Sunclipse asserts, the subject matter of the Policies is located in California, where Sunclipse conducted its business.

A federal court exercising diversity jurisdiction must apply the law of the forum state with respect to the choice of law issues. *See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1122 (7th Cir.1998) (citations omitted). "Because this suit was filed in Illinois, that state's choice-of-law rules govern." *Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101, 102 (7th Cir.1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The subject Policies do not contain language controlling the choice of forum, and "Illinois' rules for selecting a body of law [in contract disputes] in the absence of such a clause are obscure[.]" *See id.* (citations omitted).

Despite contentions by Illinois courts purporting to apply the "most significant contacts" approach articulated in the Restatement (Second) of Conflicts of Laws, *see e.g., Diamond State Ins. Co. v. Chester–Jensen Co.*, 243 Ill.App.3d 471, 486, 183 Ill.Dec. 435, 611 N.E.2d 1083, 1093 (1st Dist.1993), the Illinois Supreme Court most recently articulated a hybrid approach that combines elements from the "contact" approach with the "last-act" or "delivery" approach. *See Lee*, 86 F.3d at 103 (commenting on the elusive character of Illinois' choice-of-law rules governing contract issues as expressed in *Lapham–Hickey Steel Corp. v. Protection Mutual Ins. Co.*, 166 Ill.2d 520, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995)). In *Lapham–Hickey*, the Illinois Supreme Court set forth the following test: "Insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, [and] the place of performance, or other place bearing a rational relationship to the

general contract.'" *Lapham–Hickey*, 166 Ill.2d at 526–27, 211 Ill.Dec. 459, 655 N.E.2d at 845 (quoting *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 528, 322 N.E.2d 454, 457 (1975)). Recent Illinois appellate court decisions have held that the location of the insured risk is the most important factor in the choice of law analysis. *See Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill.App.3d 655, 205 Ill.Dec. 673, 643 N.E.2d 1280, 1287 (1st Dist.1994) ("[T]he location of the insured risk is given special emphasis."); *Diamond State Ins. Co.*, 243 Ill. App.3d at 488, 183 Ill.Dec. 435, 611 N.E.2d at 1095 ("[T]he location of the insured risk will be given greater weight than any other single contact[.]"), *but see Lapham–Hickey*, 166 Ill.2d at 527, 211 Ill.Dec. 459, 655 N.E.2d at 845 (relying on place of policy's delivery rather than location of insured risk where the insured property was located in six different states).

■ Considering the *Lapham–Hickey* factors, the court concludes that California law is the law applicable to the present action. California is the location of the insured risk-the Policies cover liability arising from Sunclipse's commercial activities which take place in California. Indeed, Sunclipse's liability to Century arose from Sunclipse's sales conduct in California allegedly in breach of the Century–Sunclipse license agreement. Although the location of the Underlying Action is sometimes considered as an additional relevant factor, Illinois courts have not equated the location of the underlying action with the location of the subject matter or insured risk. *See e.g. Evangelical Lutheran Church In Amer. v. Atlantic Mut. Ins. Co.*, 973 F.Supp. 820, 824 (N.D.Ill.1997) ("[W]here a declaratory judgment action is at issue, some Illinois cases also consider the location of the underlying lawsuit[.]"); *Society of Mount Carmel*, 268 Ill.App.3d at 665, 205 Ill.Dec. 673, 643 N.E.2d at 1287 (Finding that insured risk was located in California, and "[m]oreover, ... the underlying action was brought in a California

court[.]"). In the present case, the insured risk is unquestionably located in California. The fact that the underlying action was filed in Illinois does not demonstrate that Sunclipse's liability arose in Illinois; Century presumably preferred to proceed in Illinois, where it was located, to litigate a claim arising out of a contract governed by Illinois law.

The other *Lapham–Hickey* factors are either neutral, or point to the application of California law. Zurich delivered the insurance Policies to A & A California, Sunclipse's broker located in California. The domicile of the insured and of the insurer are not determinative, because Sunclipse is domiciled in California and Zurich is domiciled in Illinois. Indeed, Sunclipse maintains no offices in Illinois. Moreover, although the record lacks explicit evidence that Zurich is licensed to do business in California, such an inference is reasonable given that Zurich maintains a West Coast office in Glendale, California, and that the Policies contained California amendatory endorsements.[8] Finally, in the denial of coverage letter, Zurich advised Sunclipse of its rights under California law. Therefore, the court concludes that Zurich was licensed to do business in California.

Two other factors identified in *Lapham–Hickey* are the location of the last act giving rise to an enforceable contract, and the place of performance of the contract. The record does not permit a determination on the location of the last act; although it appears that the Policies were issued from Zurich in Illinois, there is also evidence that the Policies were negotiated in part, underwritten, renewed and delivered in California. *See Society of Mount Carmel*, 268 Ill.App.3d at 665, 205 Ill.Dec. 673, 643 N.E.2d at 1287 ("Although these policies were executed in Illinois, all other significant factors favor the application of California law."). With respect to the per-

formance of the contract, Sunclipse paid its premiums to its broker in California and the Policies directed Sunclipse to refer inquiries about the terms of the Policies to "its agent or broker," who was located in California.

Considering all of the aforementioned factors, the court concludes that California law will govern the interpretation of the Policies.

## C. California's Notice–Prejudice Rule

Sunclipse delayed more than two years before notifying Zurich of the underlying action. Based upon the provisions in the Policies that require the insured to provide notice of any claim or suit "as soon as practicable," Zurich asserts a late-notice defense. In response, Sunclipse argues that the defense is not available to Zurich under California law because Zurich cannot establish any actual and substantial prejudice from the delay.

The facts concerning the timing of the notice are disputed: Zurich contends that it did not receive notice from Zurich until September 24, 1997, thirty months after the filing of the original complaint in the underlying action on March 21, 1995; Sunclipse maintains that Zurich effectively received notice over two months earlier, on July 17, 1995, when Sunclipse tendered the lawsuit to its broker. Whether tender was made on July 17, 1997, or on September 24, 1997, the court agrees with Zurich that Sunclipse failed to give prompt notice. In either scenario, the delay was well over two years from the filing of the original complaint in the underlying action. *See Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 819, 26 Cal.Rptr.2d 391, 409 (2nd Dist.1994) (finding that notice received by insurer more than two years after a complaint was filed against insured in previous litigation was not prompt). Within that time span, discovery had occurred, summary judgment motions had

---

**8.** If Zurich had issued the Policies to Sunclipse as a "non-admitted insurer," Zurich would have been required to give explicit notice to Sunclipse. *See* CAL. INS.CODE § 1764.1 (West 1999). There is no evidence of such notice in the record.

been heard, significant costs had been incurred, and a trial date had been set. Sunclipse has not provided a reasonable explanation for the delay. The court concludes that the notice was not prompt as required by the Policies.

■ Nevertheless, under California law, in order for Zurich to be able to take advantage of the late notice defense, it must prove that it was actually and substantially prejudiced by Sunclipse's delay in notification of the underlying action. *See UNUM Life Ins. Co. v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 1386, 143 L.Ed.2d 462 (1999) (applying California's notice-prejudice rule); *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 760–61, 15 Cal.Rptr.2d 815, 845 (1st Dist. 1993). *Shell Oil* explained as follows:

> [A] defense based on an insured's failure to give timely notice [of an occurrence, claim or suit] requires the insurer to prove that it suffered actual prejudice. Prejudice is not presumed from delayed notice alone. The insurer must show actual prejudice, not the mere possibility of prejudice.

*Shell Oil,* 12 Cal.App.4th at 760–61, 15 Cal.Rptr.2d at 845 (internal citations omitted). California courts explain that in order to establish actual and substantial prejudice, Zurich must show a substantial likelihood that with prompt notice it would have settled the claim for less, or would have undertaken the defense and proceeded to attempt to reduce or eliminate Sunclipse's liability. *See id.* at 763, 846 (citing *Billington v. Interinsurance Exchange of So. Cal.,* 71 Cal.2d 728, 737, 79 Cal.Rptr. 326, 331, 456 P.2d 982, 987 (1969); *Northwestern Title Sec. Co. v. Flack,* 6 Cal. App.3d 134, 142–43, 85 Cal.Rptr. 693, 697–98 (1st Dist.1970).

■ Zurich claims that it was prejudiced by Sunclipse's delay in notice as a matter of law. Its only discussion of facts that would support a finding of prejudice consists of a single, conclusory paragraph stating that "[t]he parties had completed fact discovery, summary judgment motions had been heard, the parties were in the expert discovery phase, significant costs had been incurred by both sides, a trial date had been set, and any opportunity for an early settlement was long gone." (Zurich's Mem. in Opp. to Sunclipse's Summ. J. Mot., at 7.) These bare assertions do not support an inference of prejudice under California law. *See e.g., Northwestern Title Sec. Co.,* 6 Cal.App.3d at 142–43, 85 Cal.Rptr. at 697 ("[P]rejudice does not arise merely because a delayed or late notice has denied the insurance company the ability to contemporaneously investigate the claim or interview witnesses.... [T]he same rule applies to the denial of the opportunity to make an early settlement of the claim."). Zurich has not met its burden of showing that it was substantially and actually prejudiced by the delay.

■ Significantly, under California law, if the insurer denies coverage based on an assertion that the underlying claim is excluded from coverage, there is a presumption that the Insurer did not suffer prejudice because prompt notice would have merely resulted in an earlier denial of coverage. *See Shell Oil,* 12 Cal.App.4th at 760–61, 15 Cal.Rptr.2d at 845. Indeed, *Shell Oil* holds that under California law, when an insurer denies liability under a policy, it waives any claim that the insured did not comply with the notice provision of the policy. *See id.* In its essence, this well-established rule prevents an insurer from relying on an insured's failure to perform a condition of the policy when the insurer has denied coverage. By denying coverage, the insurer has demonstrated that performance of the condition would not have altered its response to the claim. *See id.* Here, after conducting an investigation into the claim, Zurich denied coverage. It therefore has effectively waived its opportunity to even raise the late-notice defense. The court thus turns to Zurich's defense of Sunclipse's claim on the merits.

### D. Duty to Defend and Duty to Indemnify

Zurich argues that it had no duty to defend or indemnify Sunclipse in the un-

derlying action. Specifically, Zurich contends that the underlying action did not allege an enumerated offense capable of triggering advertising liability coverage and that if the underlying action did involve a coverable advertising injury, the injury was not committed in the course of Sunclipse's advertising activities. Furthermore, Zurich argues that if the court finds that Sunclipse's offense constituted an advertising injury committed in the course of Sunclipse's advertising activities, Zurich nevertheless had no duty to defend Sunclipse because the Policies specifically exclude advertising injuries arising from a breach of contract. Sunclipse insists that the underlying action did involve a coverable advertising injury, and that the exclusionary provision did not operate to eliminate Zurich's duty to defend and indemnify Sunclipse for Century's non-contractual claims against Sunclipse.

■ Under California law, an insurer's duty to defend is broad. *See Staefa Control–System Inc. v. St. Paul Fire & Marine Ins. Co.,* 847 F.Supp. 1460, 1466 (N.D.Cal.1994). Indeed, the duty to defend is measured by the reasonable expectation of the insured and is broad enough to be triggered by claims that may potentially be covered by the policy. *See id.* In determining whether such duty attaches, California courts look to the plaintiff's allegations in the underlying action as well as other facts available to the insurer at the time the claim is tendered. *See Sentex Sys., Inc. v. Hartford Accident & Indem. Co.,* 882 F.Supp. 930, 937 (C.D.Cal.1995), *aff'd,* 93 F.3d 578 (9th Cir.1996). However, "the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *See Simply Fresh Fruit, Inc. v. Continental Ins. Co.,* 84 F.3d 1105 (9th Cir.1996) (superceded by statute) (quoting *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275 n. 15, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)).

On the other hand, an insurer's duty to indemnify is less broad. This duty is "determined, measured, and limited by the terms of the insurance contract and depends upon an ultimate adjudication of coverage." *See New Hampshire Ins. Co. v. Foxfire Inc.,* 820 F.Supp. 489, 497 (N.D.Cal.1993) (quoting *CNA Cas. of Cal. v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 605 n. 1, 222 Cal.Rptr. 276, 279 n. 1 (Cal.1986)). The Policies under which Sunclipse seeks indemnification state: "We will pay those sums that the insured becomes legally obligated to pay as damages because of … 'advertising injury' to which this coverage applies." Therefore, if the underlying action involved an advertising injury that is not subject to the exclusionary clause, Zurich would have both a duty to defend and indemnify. Accordingly, the court now turns to the issue of advertising injury.

### 1. Advertising Injury

In order for Sunclipse to have a reasonable expectation of coverage under the Policies for an alleged "advertising injury", three elements must first be satisfied: (1) Sunclipse must have been engaged in "advertising activity" during the policy period when the alleged "advertising injury" occurred; (2) Century's allegations must raise a potential for liability under one of the offenses enumerated in the Policies; and (3) there must be a causal connection between the alleged injury and the "advertising activity." *See New Hampshire Ins. Co. v. R.L. Chaides Constr. Co., Inc.,* 847 F.Supp. 1452, 1455 (N.D.Cal.1994). The court addresses each element in turn.

### a. Advertising Activity

■ The parties do not dispute that Century's alleged injury occurred during the time the Policies were in effect. The issue then is whether Sunclipse engaged in "advertising activity" so as to reasonably expect coverage under the Policies. Although the Policies define "advertising injury," they do not define "advertising activity." How California courts interpret the term "advertising activity" is not en-

tirely clear. In the most recent California Supreme Court decision addressing the issue, the court, without deciding, merely noted:

> [C]ourts have disagreed on the question of what constitutes 'advertising' for these purposes. Most of the published opinions hold that 'advertising' means widespread promotional activities directed to the public at large. (internal citations omitted). Of the published opinions only the courts in *American States Insurance Co. v. Canyon Creek*, 786 F.Supp. 821, 828 (N.D.Cal.1991) and *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434, 440 (D.Minn.1988) *aff'd*, 929 F.2d 413 (8th Cir.), appear to have held the term 'advertising' can also encompass personal solicitations.

*Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1277 n. 9, 833 P.2d 545, 560 n. 9, 10 Cal.Rptr.2d 538, 552 n. 9 (1992).

■ Since the issuance of that decision, one other federal court interpreting California law has held that "advertising" does also encompass personal, one-on-one solicitations. *See Sentex*, 882 F.Supp. at 939. In so deciding, the court relied in part on another federal case interpreting California law which concluded that "advertising activity" must be examined on a case-by-case basis and within the context of "the overall universe of customers to whom a communication may be addressed." *See id.* at 940 (quoting *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489, 494 (N.D.Cal.1993)). This broad reading of the term "advertising" comports with the basic rule of construction in insurance contracts that terms contained within an insuring provision be interpreted broadly, with any doubts as to coverage to be resolved in favor of the insured. *See Foxfire*, 820 F.Supp. at 494.

Given that California appears to have adopted a minority view that defines broadly the activity that may constitute "advertising," the court concludes that Sunclipse engaged in "advertising activi-

ties" when Century's alleged injury occurred. By selling Corru–Shield in lieu of its contractual obligation to sell Centurian, Sunclipse presumably engaged in one-on-one contacts with customers during which it promoted Corru–Shield.

#### b. Enumerated Offenses

Sunclipse next argues that in the underlying action, Century charged Sunclipse with engaging in advertising activities that fall into three of the offenses enumerated in the Zurich Policies: misappropriation of advertising ideas, infringement of title, and product disparagement. The court addresses each of Sunclipse's arguments in turn.

##### (i) Misappropriation of Advertising Ideas

■ Sunclipse vigorously argues that although Century's complaint did not specifically allege a misappropriation of advertising ideas, other documents Century submitted to the court outlined its theory that Sunclipse misappropriated Century's customer list. Sunclipse relies exclusively on *Sentex* in making this argument. The court concludes that this argument is without merit for several reasons.

First, in this court's reading of the pleadings in the underlying suit, Century does not allege that Sunclipse misappropriated its customer list; rather, Century asserted that contrary to its contractual obligation, Sunclipse improperly *used* the customer leads that Century supplied to Sunclipse to market Corru–Shield instead of Centurian. For example, in a motion for leave of court to conduct discovery, Century explained that "[t]he license agreement obligated Century to refer potential customers ... to Sunclipse. Accordingly, Century provided Sunclipse with numerous customer leads[.] ... Century believes that contrary to its obligations under the agreement, Sunclipse used Century's customer leads to compete with Century by promoting and selling to these customers[.]" (Sunclipse 12(M), Ex.

22). Century made similar allegations in its response memorandum to Sunclipse's summary judgment motion, and in its 12(N) statement accompanying this response. (*Id.*) Nowhere does Century allege that Sunclipse wrongfully took its customer leads; indeed, Century acknowledges that it was obligated to provide Sunclipse with West Coast leads. Therefore, although Sunclipse may have wrongfully used these leads to promote its own product, the court is not convinced that it wrongfully appropriated the names of customers.

Second, even if Century did allege the misappropriation of its customer list, the court is similarly not convinced that the misappropriation of a customer list amounts to the "misappropriation of an advertising idea." Under California law, the "misappropriation of an advertising idea" involves the "wrongful taking of the manner in which another advertises its goods or services." *FRI Holdings, Inc. v. Hartford Cas. Ins. Co.*, 83 Cal.Rptr.2d 29, 32 (4th Dist.1999). Sunclipse relies exclusively on *Sentex* in arguing that the misappropriation of a customer list amounts to the misappropriation of an advertising idea.

In *Sentex*, the plaintiff insured designed and manufactured telephone entry security systems. *Sentex*, 882 F.Supp. at 934. One of Sentex's competitors, ESSI, filed an action against Sentex alleging that one of its sales representatives, a former ESSI employee, had misappropriated ESSI's trade secrets and other confidential information, "including customers lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information" regarding ESSI's operation of business. *See id.* at 943. According to ESSI's allegations, Sentex used these trade secrets to compete directly with ESSI, by soliciting and marketing Sentex products to ESSI's customers. *See id.* The court found that Sentex's insurer, Hartford, had a duty to defend Sentex for this alleged advertising injury. *See id.* at 944. The Ninth Circuit affirmed the decision, finding it "significant that ESSI's claims for misappropriation of trade secrets relate to marketing and sales and not to secrets relating to the manufacture and production of security systems." *See Sentex*, 93 F.3d at 580. The Ninth Circuit further stated, "[w]hile we may agree with Hartford that the mere misappropriation of customer mailing lists, standing alone, may not bring a complaint within the scope of possible coverage for 'advertising injury,' as 'misappropriation of advertising ideas,' it is clear that the scope of ESSI's lawsuit was much broader." *Id.* at 580–81.

Century's allegations against Sunclipse are quite distinguishable from the allegations at issue in *Sentex*. Although Century's arguments that Sunclipse improperly sold its own product to Century's potential customers are similar to ESSI's claims, Century's claims for misappropriation of trade secrets relate primarily to the manufacture and sale of the ESD coating, not to its advertising. Sunclipse was sued for allegedly unlawfully taking Century's technology, not for taking Century's method of marketing that technology. Furthermore, Century did not allege that Sunclipse misappropriated any marketing technique or manner of advertising. This conclusion is supported by a more recent Ninth Circuit opinion which affirmed a finding in favor of the insurer where the plaintiff in the underlying action charged the insured with misappropriation of its trade secrets, including its marketing techniques and customer lists, because such allegations did not fall within the advertising injury provision of the insurance policy. *See Pierce Companies, Inc. v. Wausau Underwriters Ins. Co.*, 201 F.3d 444, 1999 WL 1011862, at *2 (9th Cir. Nov. 5, 1999). In so holding, the court noted, "[i]t is clear that the gravamen of this complaint was that [the insured] had misappropriated Color Image's trade secrets and was using them to produce a [protectible product.]" Here, as in *Pierce*, the court concludes that the

underlying action did not involve the misappropriation of advertising ideas.

### (ii) Infringement of Title

■ Sunclipse also argues that the underlying action involved the "infringement of title," because Century alleged that Sunclipse misappropriated its customer list, of which Century held the exclusive "title." In making this argument, Sunclipse contends that the term "title" refers not only to a name, mark, style or designation. Instead, Sunclipse argues that "title" also refers to the ownership of property. Again, Sunclipse relies exclusively on *Sentex* in making this argument. Zurich argues that the language of the Policies which provides coverage for claims of "infringement of copyright, title, or slogan," does not encompass a claim of infringement of a property interest.

In *Sentex,* the court adopted an extremely broad definition of the term "title" to include not only a "mark, style or designation" or "name by which anything is known," but also the "formal right of ownership of property." *Sentex,* 882 F.Supp. at 944. The court notes, however, that this holding portion of *Sentex* does not appear to be good law in the Ninth Circuit. First, in affirming the *Sentex* decision, the Ninth Circuit never reached the issue of title infringement. *See Sentex,* 93 F.3d 578. Second, the broad definition of "infringement of title" adopted in *Sentex* appears to be inconsistent with other state and federal cases within the state. *See e.g. Maxconn Inc. v. Truck Ins. Exch.,* 74 Cal. App.4th 1267, 88 Cal.Rptr.2d 750, 755 (6th Dist.1999) ("The term 'infringement of title' is part of a list that includes copyright and slogan. In company with these terms, 'title' apparently refers to a name, ... rather than to ownership of an invention or other thing.") (quoting *Owens–Brockway Glass Container, Inc. v. International Ins. Co.,* 884 F.Supp. 363, 368 (E.D.Cal.1995)), *aff'd,* 94 F.3d 652, 1996 WL 445082 (9th Cir.1996). If indeed "title" referred to ownership in property, then the words "copyright" and "slogan" would be rendered superfluous in Zurich's Policies. Because the Policies at issue here include the words slogan and copyright, the court declines to read "ownership interest in property" into the meaning of "title" under the insurance contract. Therefore, assuming without holding that Century alleged misappropriation of a customer list, such allegations do not fall into the enumerated offense of infringement of title, and therefore do not trigger the advertising injury coverage.

### (iii) Product Disparagement.

■ Finally, Sunclipse argues that the underlying action involved allegations of product disparagement, therefore falling within an enumerated offense and triggering Zurich's duty to defend. In support of its argument, Sunclipse quotes language from Magistrate Judge Lefkow's Report and Recommendation denying Sunclipse's motion for summary judgment in the underlying action in which Judge Lefkow observed that "although Sunclipse urges that undisputed evidence establishes that it treated Century's product fairly, i.e., there is no evidence of product disparagement, the record also contains evidence from which a contrary conclusion could be drawn." (Sunclipse 12(M), Ex. 23 at 12.) Zurich responds that although in the underlying action, Judge Lefkow may have been presented with evidence that Sunclipse did not treat Centurian fairly, the evidence to which she referred in her opinion is not evidence of product disparagement, but rather of Sunclipse's failure to market Centurian in good faith or fairly as required by the Century–Sunclipse license agreement.

The court agrees with Zurich. Although Judge Lefkow did mention product disparagement in her Report and Recommendation, her ultimate conclusion is that facts from the record "raise a reasonable inference that Sunclipse began marketing its own product to the exclusion of Century's product, a circumstance belying any claim of 'fair' treatment." (Sunclipse 12(M), Ex. 23 at 12.) Treating a product unfairly

does not amount to disparaging a product. The term "disparagement" refers to "statement[s] about a competitor's goods which [are] untrue or misleading and [are] made to influence or tend[ ] to influence the public not to buy." *Sentex*, 882 F.Supp. at 944. *See also Truck Ins. Exch. v. Bennett*, 53 Cal.App.4th 75, 89, 61 Cal. Rptr.2d 497, 506 (2nd Dist.1997) ("[P]roduct disparagement [is an] injurious falsehood[ ] that interfere[s] with business."). Sunclipse has pointed to no evidence from the underlying action that raises the inference of false or misleading statements—the record merely reflects that Sunclipse sold Corru–Shield to the exclusion of Centurian. Century did allege that "Sunclipse abandoned its efforts to promote Century's product and instead promoted the product it developed in secret in order to sell it to the end users of Century's product." (Sunclipse 12(M); Ex. 24.) Although such evidence raises an inference of unfair treatment of a product under the terms of the license agreement, it does not raise an inference that Sunclipse used false and misleading statements. Indeed, the evidence tends to show that rather than disparaging Century's product, Sunclipse simply replaced customer orders for Centurian with Corru–Shield products. (Sunclipse 12(M); Ex. C to Ex. 22 at 25.) Therefore, the underlying action did not involved advertising activity within the enumerated offense of product disparagement and thus does not trigger the advertising injury provisions of the Policies.

### c. Causation

■ The final required element for "advertising injury" coverage to attach is that the insured's advertising activity must allegedly cause the underlying injury. *See Bank of West*, 10 Cal.Rptr.2d 538, 833 P.2d at 551–52. Sunclipse argues that Century's injury was caused by Sunclipse's misappropriation of Century's customer list and the use of that list to sell a competing product. In response, Zurich contends that the causal connection between the advertising activity and the alleged injury requires a closer nexus than just that the misappropriated trade secret was advertised and sold. To trigger advertising coverage, Zurich argues, advertising activity must be the very source of the damages alleged. Here Zurich argues, the sale of Corru–Shield, not any advertisement of the product, was the alleged cause of the injury to Century.

The most recent California Supreme Court decision in *Bank of West* sets forth the appropriate causation analysis. *Bank of West* held that a claim of patent infringement did not fall within the advertising injury coverage, "even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than the advertisement." *Bank of West*, 2 Cal.4th, at 1275, 833 P.2d at 559, 10 Cal. Rptr.2d at 552. The court reasoned that because it had adopted a broad definition of "advertising," a more remote causal connection would, if taken to the extreme, "lead to the conclusion that any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised." *See id.*

The analysis in *Bank of West* has been applied to misappropriation of trade secret claims. *See Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968, 971 (9th Cir.1994). In *Microtec*, the plaintiff in the underlying action sued the insured for selling a misappropriated product in violation of a contract. *See id.* The court noted that although the plaintiff in the underlying action listed eight causes of action against the insured, the plaintiff did not claim that it had suffered damages because of any advertising. *See id.* The court stated, "[i]f the tortfeasor does some wrongful act and then advertises it, harm caused by the wrongful act alone is not within the scope of the term advertising injury." *See id.*

■ Applying the *Bank of West* and *Microtec* analyses to this case, the court concludes that Sunclipse cannot show a

sufficiently close causal connection between the harm alleged by Century and Sunclipse's advertising activity. Similar to the *Microtec* case, here Century sued Sunclipse for selling a misappropriated product in violation of a contractual licensing agreement and not for advertising Corru–Shield. The injury for which Sunclipse seeks coverage was not caused by its advertising of Corru–Shield—it was caused by Sunclipse's wrongful taking of Century's trade secrets, and subsequent selling of Corru–Shield in violation of the terms of the license agreement. Finding a sufficient causal connection in this case merely because, as a vendor of packaging materials, Sunclipse marketed Corru–Shield would "extend[ ] advertising injury coverage far beyond the reasonable expectations of the insured." *Bank of West,* 2 Cal.4th at 1275, 833 P.2d at 559, 10 Cal.Rptr.2d at 552 (quoting *National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77, 80 (N.D.Cal.1989) (superceded by statute)). The court concludes that the claim in the underlying action did not occur in the course of the advertising activities.

### CONCLUSION

Although Sunclipse engaged in advertising activity, that activity did not fall within an enumerated offense, and that activity did not have a sufficiently close connection to the alleged injury. Because the underlying action did not raise the potential for a liability covered by the Policies, Zurich's duty to defend was not triggered. Century's claims against Sunclipse in the underlying action do not fall within the coverage of the Policies, and therefore Zurich does not have a duty to indemnify Sunclipse.

In light of its conclusion on the advertising injury issue, the court need not address whether the Policies excluded advertising injury claims based on breach of contract, nor need the court discuss damages.

For the foregoing reasons, the court grants Zurich's motion for summary judgment and denies Sunclipse's motion for summary judgment.