**WESTERN AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**MOONLIGHT DESIGN, INC., Defendant.**

**No. 98 C 5206.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 31, 2000.

Robert Marc Chemers, Amy E. Johnson, Pretzel & Stouffer, Chtd., Chicago, IL, for plaintiff.

Patrick Joseph O'Connor, Law Office of Patrick J. O'Connor, Chicago, IL, George F. Carpinello, Philip J. Iovieno, Barrett, Gravante, Carpinello & Stern, LLP, Albany, NY, for defendant.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff West American Insurance Company (West American) seeks to resolve whether it had a duty to defend defendant Moonlight Design, Inc. (Moonlight), its insured, in a copyright infringement lawsuit filed in New York. Both plaintiff and defendant have moved for a judgment on the pleadings. We hold that a duty to defend existed under the insurance policy and therefore deny plaintiff's motion and grant defendant's cross-motion.

## BACKGROUND

Since 1986, Moonlight has been in the business of distributing bridal dresses. It has the dresses manufactured in Taiwan and then markets and distributes them in the United States. In March 1998, Moonlight was sued in federal court in New York by one of its competitors, Eve of Milady and Milady Bridals, Inc. (Milady). Milady is a New York corporation that, like Moonlight, distributed bridal dresses out of offices and showrooms located in New York City. In its lawsuit against Moonlight (the "Milady lawsuit"), Milady alleged that Moonlight infringed Milady's copyrights of bridal dress designs and falsely represented and designated the origin of those designs.[1]

Upon receiving the complaint in the Milady lawsuit, Moonlight contacted its insurer, West American. Moonlight's insurance agreement with West American (the agreement) provides coverage for certain business liabilities. In relevant part, the agreement states that West American

> will pay those sums that [Moonlight] becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. [West American] will have the right and duty to defend any "suit" seeking those damages. [West American] may at [its] discretion investigate any "occurrence" and settle any claim or "suit" that may result.

The agreement provides that it applies to any " '[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services," and further defines the term "advertising injury" as an injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

As provided by the agreement, Moonlight tendered the defense of the Milady lawsuit to West American. Moonlight notified West American that the Milady lawsuit alleged an "advertising injury" against Moonlight and therefore was covered by the agreement. Upon reviewing the complaint West American decided that it was not obligated to defend Moonlight. West American claimed that the Milady lawsuit did not allege an advertising injury "caused by an offense committed in the course of advertising" and therefore did not fall within the auspices of the agreement. West American agreed to pay defense costs, however, subject to a reservation of rights.

West American thereafter filed this action, seeking a judgment declaring that it was not obligated to defend Moonlight in the Milady lawsuit.[2] In order to resolve the issue, West American moved for a judgment on the pleadings and Moonlight answered with a similar cross-motion. After briefing on the motions was completed, the Milady lawsuit settled. According to West American's amended complaint, West American and Milady arrived at an agreement whereby West American, on behalf of Moonlight, paid Milady a sum of $100,000 to settle the lawsuit. Based on this development, West American has add-

---

1. Milady's fourth amended complaint against Moonlight alleges nine counts—Counts I through VIII are titled Copyright Infringement, and Count IX is titled False Representation and False Designation of Origin.

2. Shortly after filing the action West American's moved to strike Moonlight's affirmative defenses and to dismiss the answer as defective under Rule 9. We granted the motion to strike but found that the Rule 9 defects had been cured by amendment.

ed two counts to its original complaint against Moonlight. In addition to the original claim regarding its duty to defend (Count I of the amended complaint), West American seeks reimbursement of its defense expenditures in the Milady lawsuit and indemnification of the settlement amount (Counts II and III of the amended complaint).

For the purposes of resolving the motions presently pending before this court,, we do not address the issue whether West American is obligated to pay defense or settlement costs related to the Milady lawsuit, and therefore set aside Counts II and III of the amended complaint. The legal analysis governing those claims may differ from the standard governing whether West American had a duty to defend in the first place. A resolution of whether a duty to defend existed under the agreement, however, will dispose of at least one count of the amended complaint and simplify this lawsuit.[3] Therefore, turning to Count I of the amended complaint we find that West American had a duty to defend Moonlight in the Milady lawsuit, and accordingly deny West American's motion for judgment on the pleadings and grant Moonlight's similar cross-motion.

## DISCUSSION

### I. Choice of Law

■■■■ As a preliminary matter, we must resolve a conflict of laws. While West American argues that New York law governs the substantive issues presented in this action, Moonlight ripostes that Illinois law applies. This conflict requires us to engage in a choice-of-law analysis. When exercising diversity jurisdiction we must look to the choice-of-law rules of the forum state, Illinois, to determine which state's substantive law should apply. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *West Suburban Bank of Darien v. Badger Mut. Ins. Co.,* 141 F.3d 720, 724 (7th Cir.1998). Illinois law defers to contractual choice-of-law provisions; however, since the insurance agreement at issue here does not contain such a provision, we revert to the choice-of-law rules provided by Illinois common law. *See Diamond State Ins. Co. v. Chester–Jensen Co., Inc.,* 243 Ill.App.3d 471, 183 Ill.Dec. 435, 611 N.E.2d 1083, 1093 (1993). In insurance coverage cases, as in contract cases in general, Illinois applies the "most significant contacts test" to determine what state's substantive law applies. *See id.* The factors to be considered under this approach include

> the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.

*Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.,* 166 Ill.2d 520, 211 Ill.Dec. 459, 655 N.E.2d 842, 845 (1995); *Hofeld v. Nationwide Life Ins. Co.,* 59 Ill.2d 522, 322 N.E.2d 454, 457–58 (1975). Courts in Illinois weigh all of these factors when deciding what law governs whether a duty to defend exists under an insurance agreement, but give particular emphasis to the location of the insured risk. *See Society of Mt. Carmel v. National Ben Franklin Ins. Co. of Illinois,* 268 Ill.App.3d 655, 205 Ill.Dec. 673, 643 N.E.2d 1280, 1287 (1994); *Diamond,* 183 Ill.Dec. 435, 611 N.E.2d at 1095.

■■■■ Evaluating the facts presented in this case,[4] in light of these factors, we hold that the substantive law of New York should govern here. The insured risk at issue in this case was located in New York. Where the insured company conducts busi-

---

**3.** *See infra* n. 9.

**4.** The relevant facts can be gleaned from the Milady complaint and other materials attached to or referenced in the pleadings in this action. Therefore, we need not rely on the affidavits submitted by Moonlight in support of its cross-motion.

ness nationwide, Illinois case law provides that the location of the insured risk is the place where the insured's liability actually arises. *See Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 973 F.Supp. 820, 824 (N.D.Ill.1997); *American Builders & Contractors Supply Co. v. Home Ins. Co.*, 1997 WL 43017, at *2 & n. 5 (N.D.Ill. Jan. 28, 1997) (*citing Society of Mt. Carmel*, 205 Ill.Dec. 673, 643 N.E.2d at 1287). Here, Moonlight's alleged liability arises in New York. The Milady lawsuit, brought by a New York corporation operating out of New York, alleged injuries suffered by Milady in New York. New York was where the underlying injury occurred and where Moonlight's alleged liability arises. This factor weights heavily in favor of applying New York law.

Other factors also direct us to New York: the underlying lawsuit was filed in New York, the plaintiff in that lawsuit is domiciled in New York, and the events at issue in that lawsuit took place primarily in New York. Courts conducting a most significant contacts test have found such facts persuasive. *See U.S. Gypsum Co. v. Admiral Ins. Co.*, 268 Ill.App.3d 598, 205 Ill.Dec. 619, 643 N.E.2d 1226, 1250 (1994); *Society of Mt. Carmel*, 205 Ill.Dec. 673, 643 N.E.2d at 1287–88; *see also GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1115 (7th Cir.1995); *Evangelical Lutheran Church*, 973 F.Supp. at 824. We note that Moonlight is an Illinois corporation and that the insurance agreement at issue was executed in Illinois. These relatively sparse Illinois contacts, however, traditionally have not been enough to carry the day in a choice-of-law analysis. *See Diamond*, 183 Ill.Dec. 435, 611 N.E.2d at 1093–95; *American Builders*, 1997 WL 43017, at *2. The New York connections to this case dominate, and New York substantive law should govern the issue whether West American was obligated to defend Moonlight in the Milady lawsuit.[5]

## II. *Duty to Defend*

█ Under New York law, an insurer's duty to defend is "exceedingly broad" and more expansive than its duty to indemnify. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998); *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272, 274–75 (1984). An insurer must defend its insured "unless there is no possible factual or legal basis that would bring the action within the purview of the insurance policy." *Ben Berger & Son, Inc. v. American Motorist Ins. Co.*, 1995 WL 386560, at *2 (S.D.N.Y. June 29, 1995). If the policy applies, an insurer is required to defend even meritless actions. *Avondale Industries, Inc. v. Travelers Indemnity Co.*, 123 F.R.D. 80, 82 (S.D.N.Y.1988), *aff'd*, 887 F.2d 1200 (2d Cir.1989), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Furthermore, the insurer must defend the entire action against its insured even if only one claim potentially falls within the coverage of the policy. *Seaboard*, 486 N.Y.S.2d 873, 476 N.E.2d at 275–76.

█ In order to determine whether a duty to defend exists, a court must place the allegations of the underlying complaint alongside the language of the insurance

---

5. Moonlight attempts to sidestep the choice-of-law question by arguing that New York and Illinois law are identical on the duty to defend issue. *See Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir.), *cert. denied*, 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992); *see also In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 605 & n. 2 (7th Cir.), *cert. denied sub nom., Lin v. American Airlines, Inc.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981). Although on the surface Illinois and New York law may appear similar, a careful look at the two states' common law reveals that there is a conflict here. In short, as Judge Castillo recently observed in an analogous case about whether a duty to defend existed under an insurance agreement, New York law "interprets advertising injury broadly—far more broadly, we have found, than Illinois or any other jurisdiction." *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 991 F.Supp. 1024, 1037 (N.D.Ill.1998).

policy. *A. Meyers & Sons Corp. v. Zurich American Ins. Group*, 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206, 1208 (1989); *Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, 1996 WL 389266, at *5 (S.D.N.Y. July 10, 1996). If the facts alleged in the underlying complaint "raise a reasonable possibility that the insured may be liable for some act or omission covered by the policy, then the insurer must defend." *A. Meyers & Sons*, 546 N.Y.S.2d 818, 545 N.E.2d at 1208. Any ambiguities in the insurance contract are to be strictly construed against the insurer. *Stratford Homes, Inc. v. Lorusso*, 1995 WL 780977, at*2 (W.D.N.Y. Dec. 29, 1995). Finally, "[i]f the insurer has actual knowledge of facts extrinsic to the complaint which raise the possibility of a claim which falls within the scope of the policy coverage, the duty to defend exists." *Penny Preville*, 1996 WL 389266, at *5 (*citing Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 91–93 (1991)).

██ With these tenets of New York law in mind, we turn to examine whether the insurance agreement at issue here obligated West American to defend Moonlight in the Milady lawsuit. Under the agreement a duty to defend arises if the underlying lawsuit alleges an advertising injury "caused by an offense committed in the course of advertising." When interpreting insurance contracts containing nearly identical language, New York courts have required, first, that the offenses alleged in the underlying complaint constitute advertising injuries as defined by the agreement, and, second, that there exist "a causal connection between the ground of alleged liability and the insured's advertising activities before [finding that] there is coverage or a duty to defend." *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 1999 WL 993689, at *2 (S.D.N.Y. Nov. 2, 1999); *see A. Meyers & Sons*, 546 N.Y.S.2d 818, 545 N.E.2d at

1208. West American argues that there is no such causal connection here. According to West American, the acts of copyright infringement alleged in the Milady lawsuit occurred in the course of Moonlight's design, manufacture and sale of bridal dresses, and not in the course of any advertising activity. West American concedes that Moonlight advertised its infringing bridal dresses, but argues that this advertising activity was not the genesis of the Milady lawsuit. Rather, the root of the Milady lawsuit was the infringing design and sale of the dresses. West American argues that without the necessary causal connection between injury and advertising activity there can be no duty to defend under the agreement.

Although the source of Milady's lawsuit may well be Moonlight's design and sale of bridal dresses, the copyright claims of the Milady complaint also contain numerous allegations pertaining to Moonlight's advertising activity. For example, in several places the complaint alleges that Moonlight "has infringed upon [Milady's] copyright by publishing, displaying, selling, distributing, promoting, and advertising bridal dresses...." (Milady cplt., ¶¶ 35, 41, 47, 53, 59, 65, 71, 77). The Milady complaint also alleges that Moonlight is "advertising, promoting, offering for sale, selling and distributing bridal dresses ... that are piratical copies" and that Moonlight "advertises and falsely represents" these infringing dresses (Milady cplt., ¶ 23). Milady alleges that Moonlight "has published advertisements, *inter alia,* in *Bridal Guide* comprising photographs of its" infringing bridal dresses [6] and then, in the very next paragraph, alleges that "[o]n account of the activities of [Moonlight] herein complained of, customers and potential customers of [Milady] have been confused as to the source of origin of [Milady's] goods and potential sales for [Milady's] goods have been diverted to [Moonlight], to the harm of [Milady]" (Milady cplt., ¶¶ 21, 22). Moonlight's advertising

---

6. The Milady complaint also attaches, as an exhibit, a photocopy of a magazine advertisement for Moonlight's bridal dresses (Milady cplt., Exh. 2).

activity in connection with the infringing bridal dresses is implicated elsewhere in the Milady complaint as well (Milady cplt., ¶¶ 23, 29). While the Milady complaint primarily concerns copyright infringement, Count IX alleges a claim of false representation and false designation of origin. In that count, Milady alleges that "by virtue of the foregoing conduct and acts"—which include the previously alleged advertising activity—Moonlight "has falsely represented and designated the origin of its bridal dress designs and has caused confusion in the marketplace . . . ." (Milady cplt., ¶ 83). Finally, in its prayer for relief, the Milady complaint requests an injunction barring Moonlight from, among other things, "advertising" and "promoting" the infringing bridal dresses.

Under New York law, these allegations are sufficient to trigger a duty to defend. First, the offenses alleged fall within the agreement's definition of advertising injury. Counts I–VIII allege copyright infringement, an offense expressly included by the agreement. Count IX, which alleges false representation and false designation of origin, is covered under the offense of "misappropriation of advertising ideas or style of doing business" and therefore also falls within the agreement. *See Penny Preville*, 1996 WL 389266, at*8–9, *Ben Berger*, 1995 WL 386560, at *3. Second, the allegations satisfy New York's causal nexus requirement. Unlike Illinois and many other jurisdictions, New York applies an expansive interpretation of whether an injury is caused by an advertising activity so as to bring the underlying action within the coverage of an insurance policy. *See B.H. Smith, Inc. v. Zurich Ins. Co.*, 285 Ill.App.3d 536, 221 Ill.Dec. 700, 676 N.E.2d 221, 223 (1996) (applying New York law), *appeal denied*, 173 Ill.2d 546, 226 Ill.Dec. 139, 684 N.E.Dec 1342

(1997); *see also Winklevoss*, 991 F.Supp. at 1037 (contrasting New York and Illinois law). Courts applying New York law have held that allegations akin to those presented in the Milady lawsuit supply the causal connection to advertising activity necessary to trigger the duty. *See Stratford Homes*, 1995 WL 780977, at *3–4; *Penny Preville*, 1996 WL 389266, at *5–7; *B.H. Smith*, 221 Ill.Dec. 700, 676 N.E.2d at 223–24; *GRE Ins. Group v. GMA Accessories, Inc.*, 180 Misc.2d 927, 691 N.Y.S.2d 244, 246–47 (N.Y.Sup.1998). These decisions compel a finding that a duty to defend also exists in this case.

We pause to emphasize that our decision hinges on the application of New York law. Many jurisdictions require a tight causal connection between the underlying injury and advertising activity, and frequently hold that an insurer is not obligated to defend even where the underlying complaint contains allegations of advertising activity, so long as the ultimate source of the allegations is the manufacture, design or sale of an infringing product.[7] Not New York. Breaking from the majority position,[8] courts in New York have held that "it would be artificial to deny coverage by constructing a distinction between the injuries arising from the manufacture and sale of infringing goods and injuries arising from the marketing of these same goods by means of display or advertisement of the goods." *Penny Preville*, 1996 WL 389266, at*7. All that is needed under New York law are allegations that the insured has advertised a "knock-off" product and thereby caused harm. *See id*; *B.H. Smith*, 221 Ill.Dec. 700, 676 N.E.2d at 223–24. Indeed, a duty to defend arises in New York even if the underlying copyright infringement claims stem mainly from the design or sale of "knock-off" goods, and the advertisements are merely incidental

---

7. *See, e.g., Advance Watch Co., Ltd. v. Kemper National Ins. Co.*, 99 F.3d 795, 806–07 (6th Cir.1996); *Davila v. Arlasky*, 857 F.Supp. 1258, 1262–63 (N.D.Ill.1994); *Bank of the West v. Superior Court of Contra Costa County*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 558–59 (1992).

8. *See Winklevoss*, 991 F.Supp. at 1037 (observing that New York law "interprets advertising injury broadly—far more broadly, we have found, than Illinois or any other jurisdiction.").

to that infringing activity. *B.H. Smith*, 221 Ill.Dec. 700, 676 N.E.2d at 224.

Fortunately for Moonlight, the required causal nexus between injury and advertising activity is relatively loose in New York. Under that state's law, the allegations contained in the Milady complaint are sufficient to trigger West American's duty to defend Moonlight in the Milady lawsuit.[9]

### CONCLUSION

For the foregoing reasons, we deny West American's motion for judgment on the pleadings, and grant Moonlight's cross-motion for judgment on the pleadings with respect to Count I of the amended complaint.

---

**9.** Although we are not presented with a motion regarding Count II of the amended complaint, in which West American seeks reimbursement for defense costs, our holding that a duty to defend exists bears on that claim as well. Insofar as West American seeks defense costs from Moonlight, our decision today indicates that defense costs are most likely owed by, rather than to, West American. The issues of when West American's duty to defend began and the amount of defense costs owed, however, remain unresolved by this order.

With respect to Count III of the amended complaint, in which West American seeks indemnification for its expenditures in settling the Milady lawsuit, we make two comments. First, as the amended complaint states, it was West American who decided to negotiate and settle with Milady. Second, under New York law, the duty to indemnify is less broad than the duty to defend. *See Seaboard*, 486 N.Y.S.2d 873, 476 N.E.2d at 274–75. The issue of who must pay the settlement amount also remains open.